**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Michael COLEMAN, Defendant–Appellant.**

**No. 89CA1523.**

Colorado Court of Appeals, Div. IV.

July 2, 1992.

Rehearing Denied Aug. 20, 1992.

Certiorari Denied Feb. 1, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Laurie A. Booras, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, David M. Furman, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Michael Coleman, appeals from the judgment of conviction entered on a jury verdict finding him guilty of second degree burglary, misdemeanor theft, and four counts of prior felony convictions, thus invoking the habitual criminal statute. We affirm, but remand for correction of the mittimus.

Defendant was charged with burglary and theft offenses after he unlawfully entered his next-door neighbor's house and was caught taking various household goods. Following his conviction of those offenses and a jury finding that defendant had been convicted of four separate prior felonies, the trial court sentenced him to five concurrent life sentences.

## I.

Defendant first asserts that the trial court erred in refusing to sustain his statutory challenge for cause of a juror who was married to a police officer. We disagree.

The juror in question is a housewife married to an Aurora police officer. During voir dire, defendant challenged this panel member for cause based upon § 16–10–103(1)(k), C.R.S. (1986 Repl.Vol. 8A), which provides that a court shall grant a challenge for cause if "the juror is ... a compensated employee of a public law enforcement agency." Defendant contends that this juror was such a "compensated employee" because, by virtue of her marriage, she received medical insurance coverage through the husband's employment and was a potential recipient of his pension benefits.

In construing a statute, our task is to ascertain and give effect to the intent of the General Assembly. And, in so doing, a court should look first to the language of the statute, giving its words and phrases their plain and ordinary meaning. *People v. District Court*, 713 P.2d 918 (Colo.1986).

■ The plain and ordinary meaning of the word "employee" is someone who provides services for another and, in doing so, agrees to accept direction and control from the employer as to the desired result as well as the details and means by which the result is accomplished. *See* Black's Law Dictionary 525 (6th ed. 1990). Therefore, to be considered an "employee of a public law enforcement agency," a necessary condition is that the individual, in consideration for compensation, agrees to perform certain services or tasks and to accept direction and control from an authorized representative of the employer, in this case a public law enforcement agency.

Prior appellate decisions, therefore, have applied this statute to any employee under the control of a law enforcement agency, irrespective of his or her job duties, so long as he or she was under the control of such agency. *See People v. Manners*, 708 P.2d 1391 (Colo.App.1985) (medical employee of penitentiary); *People v. Maes*, 43 Colo.App. 426, 607 P.2d 1028 (1979) (mechanic in police garage); *People v. Scott*, 41 Colo.App. 66, 583 P.2d 939 (1978) (counsellor and baker at penitentiary).

■ However, if an individual, such as a retired security guard, is not currently providing services for, and is, therefore, not subject to the control and direction of, a public law enforcement agency, such an individual is not exempted by the statute and is eligible to serve as a juror. *People v. Scott, supra* (retired penitentiary employee).

■ Here, there is no suggestion that the juror agreed to provide services for, or that she was accepting direction from, the Aurora Police Department in consideration for any benefits that she might receive by virtue of her marriage.

Hence, we conclude that the trial court was correct in its determination that the juror was not an "employee" under the statute. She was, therefore, not disqualified from jury service by § 16–10–103(1)(k), C.R.S. (1986 Repl.Vol. 8A).

■ Defendant also argues that his challenge for cause to this juror should have been sustained pursuant to § 16–10–103(1)(j), C.R.S. (1986 Repl.Vol. 8A) because she demonstrated actual prejudice. However, the record demonstrates that defendant's sole grounds for his challenge to this juror in the trial court was based on § 16–10–103(1)(k). Consequently, because defendant did not present the issue of any actual, or implied, prejudice in the trial court, we do not address it. *See People v. Weller*, 679 P.2d 1077 (Colo.1984).

## II.

Defendant further contends that the trial court erred in refusing to suppress evidence of his four prior felony convictions. He argues that each was constitutionally infirm and, therefore, should not have been used in the penalty phase of the trial. We disagree.

■ To attack the constitutionality of a prior conviction, a defendant must make a *prima facie* showing that the guilty plea

was unconstitutionally obtained. A *prima facie* showing is made if the evidence, considered in a light most favorable to the defendant, would permit a court to conclude that the conviction failed to meet the relevant constitutional standards. *Lacy v. People*, 775 P.2d 1 (Colo.1989), *cert. denied*, 493 U.S. 944, 110 S.Ct. 350, 107 L.Ed.2d 337 (1989).

## A.

In the prior felony proceeding in Case No. 80CR1968, defendant pled guilty to the offense of first degree criminal trespass of a dwelling, a class 5 felony. Before accepting the plea, the sentencing court advised defendant that the presumptive prison term for such a felony was one to two years, but that he could be sentenced to as little as six months or as much as four years, if there were either mitigating or aggravating factors. However, the court did not specifically inform him that, pursuant to § 17–22.5–303(1), C.R.S. (1986 Repl. Vol. 8A), a one-year period of parole would follow any term of imprisonment. Defendant was sentenced to one year of imprisonment and was required to serve one year of parole.

Defendant now argues that the sentencing court's failure to advise him of the mandatory period of parole violated Crim.P. 11(b)(4), and thus, his guilty plea was involuntary. We are not persuaded.

■ Crim.P. 11(b)(4) provides that, before a sentencing court accepts a guilty plea, the court must determine, *inter alia*, that the defendant understands the possible penalty or penalties. Thus, the court must inform a defendant of any consequences of his plea which could have a "definite, immediate, and largely automatic effect on the range of [his] punishment." *People v. McKnight*, 200 Colo. 486, 617 P.2d 1178 (1980). A mandatory period of parole is such a consequence because the defendant's freedom during the term of parole is significantly curtailed. *People v. Sandoval*, 809 P.2d 1058 (Colo.App.1990).

■ However, if the length of a defendant's total sentence, including any period

of parole, is less than the maximum that he was advised he could receive, the court's failure to advise him of any mandatory parole term does not render the plea involuntary. In such case, the sentence imposed is less than the maximum that he was aware he could receive when he entered his plea of guilty. *People v. Tyus*, 776 P.2d 1143 (Colo.App.1989).

Nevertheless, defendant contends that we should decline to follow *Tyus* because it conflicts with our previous holding in *People v. Chippewa*, 713 P.2d 1311 (Colo.App. 1985), *aff'd on other grounds*, 751 P.2d 607 (Colo.1988). However, defendant misreads *Chippewa*.

There, the court advised the defendant that the court, in its discretion, could sentence him within the presumptive range. In fact, because the defendant was on parole at the time of the offense, a sentence in the aggravated range was mandated by statute. Hence, unlike the situation in *Tyus*, the defendant in *Chippewa* was advised that he could receive a lesser sentence than the one that he was, in fact, eligible to receive.

■ Here, the defendant was correctly advised that he could be incarcerated for a term from six months to four years. Because defendant's total sentence of one year, plus one year parole, fell below the four-year maximum that the sentencing court advised defendant he could receive, the trial court properly concluded that the failure to advise defendant of the mandatory parole obligation did not invalidate his plea.

Defendant further contends that his plea was invalid because the sentencing court failed to determine that he understood the court was not bound by any representations made to him concerning the sentence to be imposed. Again, we disagree.

■ Crim.P. 11(b)(5) requires that the sentencing court, before accepting a guilty plea, determine if the defendant understands that the court is not bound by representations made by any person regarding the penalty to be imposed. However, this does not impose a prescribed ritual or

wording before the court accepts a guilty plea. *People v. Cushon,* 650 P.2d 527 (Colo.1982).

■ Here, the court accepted the plea after asking defendant twice whether anyone had promised him anything in order to obtain his plea of guilty. In addition, the record of defendant's providency hearing establishes that no representations regarding the sentence to be imposed had been made and that the court advised him that his sentence, within certain parameters, was solely in its discretion.

Hence, because this record reveals that the trial court substantially adhered to the requirements of Crim.P. 11(b)(5), we conclude that no error was committed in accepting defendant's guilty plea.

### B.

Defendant next contends that his plea in Case No. 80CR578 is invalid because the trial court did not make a determination whether defendant had been advised of, and understood, his right to counsel and reasonable bail. He further contends that the court failed to provide adequate advisement regarding his right to compulsory process, his right to a unanimous jury verdict, his right to testify, and failed to determine that he understood the factual basis for the plea agreement. We are not persuaded by any of these contentions.

■ Due process of law does not mandate that a trial court advise a defendant of every possible constitutional right that may be waived by the entry of a guilty plea. *People v. Drake,* 785 P.2d 1257 (Colo.1990).

■ Specifically, when accepting a guilty plea, the court is not required to advise a defendant of his right to counsel if the defendant is represented by counsel at the providency hearing, *People v. Derrera,* 667 P.2d 1363 (Colo.1983), nor is the trial court required to inform a defendant of his right to reasonable bail. *People v. Drake, supra.* And, there was representation by counsel for defendant in Case No. 80CR578.

■ Defendant next maintains that the court did not inform him of his right to a unanimous verdict and, as a consequence, his guilty plea was not entered knowingly or voluntarily. We again disagree.

Crim.P. 11(b)(3) requires, *inter alia,* that a trial court, before accepting a plea of guilty, insure that a defendant understands that he has a right to a trial by jury.

Here, the court asked defendant, "You have a right to a jury trial of twelve; do you understand that?" Hence, because Crim.P. 11(b)(3) only requires the court to insure that a defendant understands a right to trial by jury and not that defendant be advised of his statutory right to a unanimous jury verdict, we conclude that this advisement was more than sufficient.

■ Defendant also argues that his guilty plea was not voluntarily and knowingly entered because the sentencing court failed to advise him of his right to testify on his own behalf. Again, we find no merit to this contention.

Because Crim.P. 11 does not mandate a specific advisement of a defendant's right to testify on his own behalf, no such advisement is necessary. *People v. Malouff,* 721 P.2d 159 (Colo.App.1986).

### C.

■ In addition, defendant claims that the trial court also failed to advise him of his right to testify in Case No. 80CR330. We simply note that defendant's representation is inaccurate as the trial court informed defendant, "You would have the right to testify in your own defense...."

Finally, defendant argues that the sentencing judge in Case No. 80CR578 did not determine if defendant understood the factual basis for the plea agreement. We find no support for this contention.

Crim.P. 11(b)(6) provides that, if a plea is entered pursuant to a plea agreement, the trial court must explain to the defendant that the defendant understands the basis for the plea agreement.

Here, as in *People v. Cushon,* 650 P.2d 527 (Colo.1982), the record makes it clear that the trial court carefully explained each element of the charge and that defendant

admitted that he knowingly took something of value from the named victim and that he understood the consequences of his plea.

Under these facts, we again perceive no error.

Because a defendant is subject to sentencing as a habitual criminal if he has been three times previously convicted of a felony, § 16–13–101(2), C.R.S. (1986 Repl. Vol. 8A), and in light of our consideration of defendant's three convictions above, we need not address defendant's contentions with respect to Case No. 80CR623.

### III.

Defendant next argues that the trial court erred in denying his motion to dismiss because of a claimed violation of his right to a speedy trial. We reject this contention.

In April 1987, defendant was arrested for burglary and released on a personal recognizance bond. Later, in July 1987, defendant was charged with another burglary and his bond for this charge was set at $10,000. Then, in August 1987, the district attorney, pursuant to § 16–4–107, C.R.S. (1986 Repl.Vol. 8A), filed a motion to increase the bond for the July 1987 offense, arguing that it had just been determined that the defendant had four prior felony convictions and that it was, therefore, likely that defendant was going to be charged as an habitual offender.

After holding an evidentiary hearing, the trial court increased defendant's bond, concluding that the newly discovered evidence regarding defendant's prior felony convictions, coupled with the fact that he was on bond for the April charge and that he was the possible subject of a probation revocation action, indicated a strong likelihood he might fail to appear.

When defendant's trial commenced in December 1988, he moved to dismiss, alleging that the speedy trial provisions of § 16–4–103(2), C.R.S. (1986 Repl.Vol. 8A) had been violated. The trial court denied this motion, and defendant now claims this constituted error.

A defendant's bond can be increased under two separate statutes. Section 16–4–103(2), C.R.S. (1986 Repl.Vol. 8A)

applies only in that instance in which a bond is increased following a specific finding that the defendant, while free on that bond, committed a class 1, 2, 3, or 4 felony. If such a finding is made and the bond is increased pursuant to this statutory provision, defendant is entitled to have the charges tried within ninety days from the date the bond was increased. *People v. Mascarenas*, 706 P.2d 404 (Colo.1985).

In contrast, § 16–4–107, C.R.S. (1986 Repl.Vol. 8A) allows a district attorney to apply for an increase in a defendant's bail in those situations not contemplated by § 16–4–103(2). Further, unlike § 16–4–103(2), this statute has no ninety-day trial requirement, and thus, a defendant whose bond is increased under this section falls under the general six-month speedy trial provision of § 18–1–405, C.R.S. (1986 Repl. Vol. 8B).

In the case at bar, the district attorney specifically relied upon § 16–4–107 in requesting that defendant's bond be increased. Further, this request was not based upon any allegation that defendant had committed an additional felony while free on the bond that was eventually increased. Instead, the request was specifically based upon the new information which indicated that defendant had been previously convicted of four felonies.

Under these circumstances, we conclude that the trial court did not err in denying defendant's motion to dismiss.

### IV.

Finally, defendant and People agree that the trial court erred in imposing a separate life sentence for each habitual count. Thus, the mittimus must be corrected to reflect a single life sentence for the substantive second degree burglary conviction.

The judgment of conviction is affirmed, and the cause is remanded for correction of the mittimus to show one life sentence.

JONES and DAVIDSON, JJ., concur.