STATE of Wisconsin EX REL. Phillip I. WARREN,
Petitioner-Appellant, †

v.

David H. SCHWARZ, in his capacity as Administrator,
Department of Administration, Division of Hearings
and Appeals, Respondent-Respondent.

Court of Appeals

*No. 96–2441. Submitted on briefs March 7, 1997.—Decided
May 15, 1997.*

(Also reported in 566 N.W.2d 173.)

†Petition to review granted.

711

712

For the petitioner-appellant the cause was submitted on the briefs of *Ralph A. Kalal* of *Kalal & Associates* of Madison.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Pamela Magee*, assistant attorney general.

Before Eich, C.J., Vergeront and Deininger, JJ.

VERGERONT, J. Phillip Warren filed a petition for writ of certiorari to review the decision of the Department of Administration, Division of Hearings and Appeals (division) revoking his probation. His probation was revoked because he failed to successfully complete a sexual offender treatment program in that he failed to acknowledge responsibility for the sexual assault for which he was convicted. The trial court affirmed the decision of the division. Warren appeals, contending that it is a violation of his right to due process to revoke his probation because of his denial of guilt for a sexual assault when the conviction for that assault is based on an *Alford* no contest plea. He also

contends that the State did not adequately explore suitable alternatives to revocation. We conclude that Warren's right to due process was not violated and that the division properly exercised its discretion in concluding that there were no alternatives to revocation. We therefore affirm.

## BACKGROUND

Warren was convicted of first-degree sexual assault of a child in July 1990, following the entry and acceptance of an *Alford* no-contest plea. The victim was the daughter of Warren's girlfriend. Before the trial court accepted the plea and after advising and questioning Warren on other matters, the court advised Warren that, in the event the court granted probation, counseling would likely be a condition. The court continued, "and that carries with it—I realize that you, by making your plea of no contest, are not admitting anything in court, but you still would have an obligation to enter into counseling in good faith with the counselor, the psychiatrist, or doctor, whoever, so that's something you should realize." The court then asked Warren if he had any questions given all the things the court had told him about the effect of his plea, and Warren answered "no." Before accepting Warren's plea, the court also found strong evidence of actual guilt based on the testimony at the preliminary hearing.

The trial court imposed a five-year sentence which it stayed in favor of an eight-year term of probation. One of the court-ordered conditions of probation was that Warren cooperate with any counseling as ordered by the Department of Corrections (DOC) and complete any counseling as ordered. DOC imposed other conditions, including rules governing his contact with

minor children, and more specific rules regarding counseling, which will be discussed in more detail later in the opinion.

DOC issued a notice of violation on or about September 28, 1995, alleging that Warren had violated a condition of probation by failing to successfully complete Attic's Denial Focus Sex Offender Treatment Program in violation of Rule #15f of the Rules of Probation signed on April 3, 1995. That rule provided: "You shall enter and successfully complete the sex offender treatment groups at an approved inpatient treatment program, attend weekly, and abide by the rules of contract, by April 20, 1995."

After a hearing, the hearing examiner for the division ordered that Warren's probation be revoked.[1] In his decision, the hearing examiner made the following findings. The court accepted Warren's *Alford* plea and determined there was strong evidence of Warren's guilt. The court also advised Warren that if he were placed on probation, he would be expected to enter into good faith counseling as part of his probation term. Warren adequately reported to his probation agent, paid all court-ordered financial obligations, and maintained stable employment and a stable residence. Warren attended three separate group sessions of Attic's treatment program, the first beginning in March 1991. He attended every meeting and

---

[1] If a probationer violates the conditions of probation, DOC may initiate a proceeding before the Division of Hearings and Appeals in the Department of Administration. Section 973.10 (2), STATS. The hearing takes place unless waived by the probationer, and the hearing examiner enters an order either revoking or not revoking probation. *Id.* Either DOC or the probationer may request review of that order by the administrator of the division. *Id.*

participated in discussions. He repeatedly denied any culpability for the conviction, denied he had committed any sexual offense, and portrayed himself as a victim of the criminal justice system. He was repeatedly warned by his agent that he must successfully participate in the sex offender treatment program or risk revocation. His rules were amended numerous times to impress upon him the seriousness of the treatment requirement.

In his decision, the examiner also discussed Warren's position that DOC lacked the authority to require him to successfully complete the treatment program because he pleaded no contest and maintained his innocence. The examiner noted that Warren was a convicted sex offender, had been ordered to cooperate in good faith in counseling and to complete any counseling ordered and that treatment was consistently emphasized by his agent as a key aspect of his supervision. The examiner stated that Warren's failure to admit his guilt as part of treatment effectively hindered the probation agent's ability to ensure public safety and Warren's rehabilitation. The examiner found that Warren had a moderate to moderately high risk of reoffending within the community because of his failure to take responsibility for his actions that led to the sexual assault conviction. Revocation was therefore necessary both to protect the public and to provide a confined correctional treatment setting for Warren. The examiner concluded that alternatives to revocation within the community were not viable and feasible because of Warren's failure to successfully complete the community-based treatment.

The examiner's decision was affirmed by the division administrator. On appeal by writ of certiorari, the trial court affirmed. It concluded that the

requirement that Warren successfully complete sexual offender treatment was a reasonable requirement necessary for the protection of the public and for Warren's rehabilitation and served a legitimate penological objective. The court rejected Warren's argument that his right to due process was violated because he was required to admit his guilt in order to successfully complete the treatment program.

## DISCUSSION

*Due Process*

■ We review the division's decision, not that of the trial court. A court's review by certiorari of a tribunal's decision is limited to four inquiries: (1) whether the tribunal stayed within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will, not its judgment; and (4) whether the evidence was such that it might reasonably make the decision that it did. *Van Ermen v. D.H.S.S.,* 84 Wis. 2d 57, 63, 267 N.W.2d 17, 20 (1978). The first issue Warren raises on appeal—whether his revocation for failure to acknowledge responsibility for the sexual assault violates his right to due process—involves the second inquiry and presents a question of law, which we review de novo. *See State v. Carrizales,* 191 Wis. 2d 85, 92, 528 N.W.2d 29, 31 (Ct. App. 1995).

■ Warren's due process argument is based on the nature of the *Alford* plea. An *Alford* plea is a plea in which the defendant pleads either guilty or no contest, while either maintaining his innocence or not admitting having committed the crime. *See State v.*

*Garcia,* 192 Wis. 2d 845, 856, 532 N.W.2d 111, 115 (1995); *see also State v. Salentine,* 206 Wis. 2d 418, 423–25, 557 N.W.2d 439, 441–42 (Ct. App. 1996). Our supreme court has recognized that an *Alford* plea is a legally permitted form of a plea, which a court may in its discretion accept when the court determines there is strong evidence of actual guilt and the plea is knowing, voluntary and intelligent. *Garcia,* 192 Wis. 2d at 859–60, 532 N.W.2d at 116–17.[2] A defendant has no constitutional right to the acceptance of an *Alford* plea. *North Carolina v. Alford,* 400 U.S. 25, 39 n.12 (1970).

Warren contends that when a court accepts an *Alford* plea, it "countenances the process of the defendant maintaining his or her innocence while still being convicted and punished" and this carries with it an "implicit assurance" that the defendant will not be punished for asserting his or her innocence. According to Warren, this assurance is violated when probation is revoked for failing to admit commission of the crime in the context of a treatment program required as a condition of probation. The State responds that *Carrizales* has resolved this issue against Warren.

■

In *Carrizales,* the defendant pleaded no contest to a sexual assault charge. The trial court accepted the

---

[2] *Alford* pleas are treated differently than other pleas in that for the latter the court must establish a sufficient factual basis that the defendant committed the crime to which he is pleading, while for *Alford* pleas a higher level of proof—a showing of strong proof of guilt—is required. *State v Smith,* 202 Wis. 2d 21, 27, 549 N.W.2d 232, 234–35 (1996). "The requirement of a higher level of proof is necessitated by the fact that the evidence has to be strong enough to overcome a defendant's protestations of innocence." *Id.* at 27, 549 N.W.2d at 235.

plea, withheld sentence, and placed him on probation for three years. As a condition of probation, the court ordered Carrizales to receive any counseling deemed appropriate by the probation agent. *Carrizales,* 191 Wis. 2d at 91–92, 528 N.W.2d at 30. When Carrizales was terminated from the sexual offender treatment program because he refused to admit the sexual assault, he sought a temporary injunction against revocation of his probation, which the trial court treated as a motion to modify the terms of probation. *Id.* at 92, 528 N.W.2d at 30–31. The issue before us on appeal was whether the requirement that Carrizales admit his guilt in the context of a treatment program that was a condition of his probation violated his Fifth Amendment right against self-incrimination. *Id.* at 92, 528 N.W.2d at 31. We concluded that it did not, because Carrizales had already been convicted of the crime and there was no threat that the admission would be used in a separate criminal proceeding. We also concluded that the requirement that the probationer admit responsibility for the assault in order to successfully complete the program was an appropriate condition of probation because it met the twin goals of rehabilitation and protection of the community: the persons providing the treatment viewed it as a necessary and the first step toward rehabilitation, and untreated sex offenders pose a risk in the community. *Id.* at 95–96, 528 N.W.2d at 32.

■

*Carrizales* does establish that the trial court may properly impose counseling as a condition of probation after a conviction for a sexual assault. *Id.* at 93, 528 N.W.2d at 31. It also establishes that a requirement that the probationer admit responsibility for the sexual assault in the context of a required treatment program

is within DOC's statutorily-granted authority to supervise a probationer under conditions set by the court and rules and regulations set by DOC. *See id.* at 95–96; 528 N.W.2d at 32; *see also* § 973.10(1), STATS. However, although we held in *Carrizales* that this requirement did not violate a probationer's Fifth Amendment right against self-incrimination, we did not there address the contention on this appeal—that the otherwise valid requirement violates a probationer's right of due process because of the court's acceptance of an *Alford* plea. We do not agree with the State that *Carrizales* resolves this issue, but we decide the issue against Warren for the reasons we explain below.

The premise of Warren's due process argument is that the acceptance of an *Alford* plea implies an assurance that the defendant will not have to admit his guilt either during conviction or punishment. This premise is faulty. An *Alford* plea does not imply a promise or assurance of anything. More accurately stated, an *Alford* plea, if accepted by the court, permits a conviction without requiring an admission of guilt and while permitting a protestation of innocence. There is nothing inherent in the nature of an *Alford* plea that gives a defendant any rights, or promises any limitations, with respect to the punishment imposed after the conviction. Warren provides no authority for this proposition, and we find nothing in the cases discussing the nature and validity of *Alford* pleas that suggests this is the case.

We do not understand Warren to argue that the trial court or the prosecutor actually gave assurances to Warren that he would not have to admit guilt "during punishment." Indeed the record shows that the

only comments by the court in this regard informed Warren that his not having to "admit . . . anything in court" did *not* affect his obligation to enter in good faith into the counseling that would likely be imposed as a condition of confinement. And it is undisputed that the probation agent consistently expressed to Warren that he did have to admit responsibility for the assault in order to successfully complete the counseling that was a condition of his probation.

Warren argues that the due process principle applicable in this case is the same as that applied in *Raley v. Ohio,* 360 U.S. 423 (1959), and requires reversal of the revocation decision. In *Raley,* a member of a commission established by the state legislature both expressly and implicitly assured persons being questioned by the commission that they had a state constitutional privilege not to incriminate themselves. After declining to answer and claiming that privilege, those persons were prosecuted for failing to answer because a state statute denied immunity to persons testifying before legislative committees. *Id.* at 424–26. The Supreme Court concluded that the convictions for failure to answer the questions violated the due process clause of the Fourteenth Amendment because they were "the most indefensible sort of entrapment by the state—convicting a citizen for exercising a privilege which the state has clearly told him is available to him." *Id.* at 438. Warren contends that probation revocation is a punishment for asserting his innocence and is the same form of "state-created entrapment" as that held constitutionally impermissible in *Raley*.

We do not agree with Warren that the facts in this case constitute "state entrapment" of the type described in *Raley*. It was critical to the Court's decision in *Raley* that the commission had actively

misled the defendants into not answering questions by assurances that they had a privilege to do so, although the Court did not find that this misleading was intentional. *Id.* at 437–39. As we have already discussed, there is no legal basis for implying, solely from the acceptance of an *Alford* plea, an assurance that Warren would not be sanctioned if he failed to take responsibility for the sexual assault in the context of the counseling required as a condition of his probation, and there were no express assurances given him.

Warren also finds support for his argument in *Carrizales*. First, he points to our statement that "if probation is revoked and Carrizales is sentenced, the trial court may not base its sentence exclusively upon Carrizales's refusal to admit guilt." *Carrizales*, 191 Wis. 2d at 96, 528 N.W.2d at 32. This statement was based on case law establishing that it is a violation of a defendant's right against self-incrimination to subject him to greater penalties at sentencing for having exercised his right against self-incrimination, but it is not a violation of that right to take the defendant's attitude toward the crime into account as one among a number of factors relevant to sentencing. *See State v. Baldwin,* 101 Wis. 2d 441, 456–59, 304 N.W.2d 742, 750–52 (1981). We do not see what relevance this has to Warren, since he has already been sentenced, and he expressly states that his argument is premised on the due process clause, not the Fifth Amendment right not to incriminate one's self.

Second, Warren points to the dissent in *Carrizales*. The dissent concluded that the expulsion from the treatment program because Carrizales would not admit his guilt was a new factor which frustrated the counseling condition of probation and requiring the court to "resentence" Carrizales (although the court

had withheld a sentence when it imposed probation). *Carrizales*, 191 Wis. 2d at 100–01, 528 N.W.2d at 34 (Sundby, J., dissenting). Again, we do not see how this analysis supports the result Warren seeks. He has already been sentenced, and he is not asking the court to resentence him; instead he seeks to reverse the probation revocation.

██

We conclude that the trial court's acceptance of Warren's *Alford* plea does not limit the requirements DOC may otherwise lawfully impose on Warren, and that Warren's right to due process was therefore not violated by requiring that he admit responsibility for the sexual assault in the context of a treatment program required as a condition of probation.[3]

*Alternatives to Revocation*

Warren's second challenge to the probation revocation is that the division had an obligation to

---

[3] We recognize that Warren may be contending that he would not have entered an *Alford* plea had he understood he might have to or would have to admit guilt in the context of the court-ordered counseling that was a condition of his probation. However, that contention is not a challenge to the correctness of the decision to revoke his probation. Rather, it goes to whether his plea was knowing, voluntary and intelligent. We note that Warren has filed a motion for postconviction relief arguing that his *Alford* plea was not knowingly and intelligently entered because he was not informed that he would have to admit his guilt if he was given a term of probation. *See State v. Warren*, Case No. 96–3451-CRLV. Our decision on this appeal does not address that argument. We decide only that the revocation of Warren's probation for failure to admit his guilt after acceptance of his *Alford* plea did not violate his right to due process.

establish, before revoking parole, that there was no reasonable alternative to revocation, which includes a duty to investigate the availability of potential treatment alternatives, and that it did not do so. This challenge implicates the third and fourth areas of a court's certiorari review—whether the division's decision was arbitrary, unreasonable and capricious, representing its will, not its judgment, and whether it is supported by the evidence. We begin by defining more precisely the duty of the division and our scope of review.

An agency's decision is not arbitrary and capricious and represents its judgment if it represents a proper exercise of discretion. *Von Arx v. Schwarz,* 185 Wis. 2d 645, 656, 517 N.W.2d 540, 544 (Ct. App. 1994). In *Plotkin v. DHSS,* 63 Wis. 2d 535, 217 N.W.2d 641 (1974), the court held that these ABA guidelines "properly set forth the duty of . . . [an] administrative body in exercising its discretion in regard to the possibility of probation revocation:

5.1 **Grounds for and alternatives to probation revocation.**

(a) Violation of a condition is both a necessary and a sufficient ground for the revocation of probation. Revocation followed by imprisonment should not be the disposition, however, unless the court finds on the basis of the original offense and the intervening conduct of the offender that:

(i) confinement is necessary to protect the public from further criminal activity by the offender; or

(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

(iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

(b) It would be appropriate for standards to be formulated as a guide to probation departments and courts in processing the violation of conditions. In any event, the following intermediate steps should be considered in every case as possible alternatives to revocation:

(i) a review of the conditions, followed by changes where necessary or desirable;

(ii) a formal or informal conference with the probationer to re-emphasize the necessity of compliance with the conditions;

(iii) a formal or informal warning that further violations could result in revocation." American Bar Association, *Standards Relating to Probation*, pp. 15, 16, 56, 57.

*Id.* at 544–45, 217 N.W.2d at 645–46.

In a later case, *Van Ermen*, 84 Wis. 2d 57, 267 N.W.2d 17 (1978), the court considered the argument that the *Plotkin* standards required that the Department of Health and Social Services consider alternatives to revocation and stated:[4]

This does not mean that revocation cannot occur unless alternatives are tried, but it does mean that the Department must exercise its discretion by at least considering whether alternatives are available and feasible.

---

[4] Although *Van Ermen* was a certiorari review of a parole revocation, it discussed and applied the *Plotkin* standards because the Department of Health and Social Services had relied on them in ordering parole revocation. *Van Ermen,* 84 Wis. 2d at 65–67, 267 N.W.2d at 21–22.

*Id.* at 67, 267 N.W.2d at 21–22. We consider this to be the proper formulation of the State's duty with respect to alternatives to probation revocation.

Although DOC has the burden of proving the alleged probation violation by a preponderance of the evidence at the revocation hearing, on appeal challenging the division's decision to revoke, the probationer has the burden of proving the decision was arbitrary and capricious, that is, that the division did not properly exercise its discretion. *Von Arx,* 185 Wis. 2d at 655, 517 N.W.2d at 544. A proper exercise of discretion contemplates a reasoning process based on the facts of record and a conclusion based on a logical explanation founded upon a proper legal standard. *Id.* at 655, 517 N.W.2d at 544. We may not substitute our judgment for that of the division; we inquire only whether substantial evidence supports its decision. If it does, we must affirm even though there is evidence that may support a contrary determination. *Id.* at 656, 517 N.W.2d at 544. Substantial evidence is evidence that is relevant, credible, probative and of a quantum upon which a reasonable fact-finder could base a conclusion. *Id.*

The record before the hearing officer in this case consisted of evaluations and reports on Warren's treatment needs from the beginning of his probation until just before the notice of violation. These show that the first time he participated in the Attic twelve-week denial focus sex offender treatment group in 1991, he attended but consistently denied that he had assaulted his former girlfriend's daughter, stating that she had "made this all up to be a class hero." The therapist considered him a high risk of reoffending. Warren entered the program a second time in the following

year, and at the program's completion, the therapist reported that he again participated only with great reluctance and continued to deny the offense. The therapist stated that he posed a threat to the community, and that he was not a candidate for further treatment "due to his extreme denial stance."

On February 22, 1995, a specific rule was added to Warren's conditions of probation[5] that required Warren "to enroll in a sex offender treatment group that is of your choice with the approval of your agent and you shall successfully complete all recommended treatment." That rule was reaffirmed on April 3, 1995, and a rule was added at that time that Warren participate in a sex offender evaluation to include a psychological evaluation and follow through with the recommendations made. In April 1995, Warren went to a psychologist of his own choosing because he questioned his need to be supervised in his contact with the minor son of his current girlfriend and his need for sex offender treatment. That psychological evaluation concluded that Warren needed to participate and successfully complete a denial focused, sex offender treatment group followed by long term sex offender treatment and that, should he refuse to participate or successfully complete either program, he remained at a much higher risk in the community for reoffense because of his untreated status. The evaluation also recommended that he should be restricted in his contact with children until his treatment status progressed. The record indicates that Warren claimed he stopped seeing this psychologist because she did not give him a favorable recommendation.

---

[5] From the beginning of Warren's probation, one condition was, "You shall make every effort to accept the opportunities and counseling offered by supervision."

Warren was allowed to participate in the Attic program a third time, in the summer of 1995. At the program's completion, the therapist reported that Warren continued to deny his involvement in the offense, portrayed himself as a caring parental figure, a victim of the judicial system, attacked the character of the child and her mother, and blamed his various problems on his abusive and immoral female partners. The therapist concluded that Warren was not an acceptable candidate for the treatment program. Relapse factors showed a high risk of reoffending.

The record contains evidence that throughout Warren's probation he continually requested permission to have contact with children and attempted to circumvent the restrictions regarding his contact with children on a number of occasions.

The revocation report, also part of the record, stated that alternatives to revocation were considered and rejected because Warren was not amenable to treatment and that the Division of Intensive Sanctions[6] was considered but rejected because

---

[6] Section 301.048, STATS., provides in part:

**Intensive sanctions program.** (1) PROGRAM ADMINISTRATION AND DESIGN. The department shall administer an intensive sanctions program. The department shall design the program to provide all of the following:

(a) Punishment that is less costly than ordinary imprisonment and more restrictive than ordinary probation or parole supervision.

(b) Component phases that are intensive and highly structured.

(c) A series of component phases for each participant that is based on public safety considerations and the participant's needs for punishment and treatment.

(2) ELIGIBILITY. A person enters the intensive sanctions program only if he or she has been convicted of a felony and only under . . . the following circumstances:

Warren is a sex offender. The report concluded that Warren was in need of treatment and that treatment within an institution appeared to be the only option because the community-based treatment programs were not able to break through his denial.

We conclude that the division properly exercised its discretion in revoking Warren's probation, and, in particular, discharged its duty to consider whether alternatives to revocation were available and feasible. Warren does not dispute that he refused to admit responsibility for the offense and does not contend that he did not understand that such an admission was considered essential to the successful completion of the treatment required as a condition of his probation. There is substantial evidence to support the division's conclusion that in the absence of such an admission, Warren was at a high risk of reoffending. The division did consider whether there were alternatives to revocation in response to the violation. Its conclusion that there were none is a reasonable one and is supported by substantial evidence in the record.

Warren argues that the fact that he twice previously completed the Attic program without admitting his responsibility but was not revoked then shows that revocation was not necessary. We disagree with this conclusion. We think this shows that DOC took intermediate steps before deciding on revocation, as directed by *Plotkin*. Warren was allowed to repeat the program three times in an effort to see if his participation would improve, and he was allowed to see a psychologist of his choosing to determine whether the

----

. . . .

(d) The department and the person agree to his or her participation in the program as an alternative to revocation of probation or parole.

requirements placed on him were necessary. With this history, it was reasonable for the division to conclude that Warren's denial stance was not going to change and that he was not amenable to the necessary treatment.

Warren appears to argue that DOC or the division had a duty to investigate and permit Warren to try treatment programs that did not require an admission of guilt, referring to *Von Arx*. *Von Arx* does not impose such a duty. In *Von Arx,* the probationer challenged revocation for failure to meet the sexual offender treatment conditions of his probation on the ground that the state had failed to reasonably accommodate his religious beliefs. *Von Arx* claimed the state had a duty to enroll him in treatment programs that did not offend his religious beliefs. *Von Arx,* 185 Wis. 2d at 649, 517 N.W.2d at 542. We assumed for purposes of argument that the duty to consider feasible alternatives involves the obligation to reasonably accommodate a probationer's religious beliefs. *Id.* at 656, 517 N.W.2d at 545. We concluded that the State made a reasonable effort to find a suitable sexual offender treatment program that did not offend the probationer's views, including giving the probationer the opportunity to offer a scientifically-approved treatment program that did not offend his views. *Id.* at 657–58, 517 N.W.2d at 545.

Warren's challenge to the requirement that he admit responsibility for the offense is not based on a religious belief. Therefore, any duty the State may have to reasonably accommodate religious beliefs by finding suitable sex offender treatment programs to accommodate those beliefs is not relevant to Warren's revocation.

Warren also argues that revocation was improper because he was subject to numerous rules during the course of his probation, many of them changing over time, and his failure to admit his guilt was the only violation. This argument ignores the fact that the crime for which Warren was convicted and sentenced to probation was sexual assault of a child. It was reasonable for the division to consider the rules relating to his treatment as a sex offender to be of such significance that his failure to successfully complete that treatment justified revocation in spite of his compliance with other rules.

*By the Court.*—Order affirmed.