The PEOPLE of The State of
Colorado, Petitioner,

v.

Douglas BIRDSONG, Respondent.

No. 96SC828.

Supreme Court of Colorado,
En Banc.

May 18, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, John J. Krause, Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

Law Office of Michael T. Kossen, Michael T. Kossen, Highlands Ranch, for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

This case raises the question of whether a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), requires additional advisement and findings prior to acceptance by the trial court, or whether the acceptance of such a plea constrains the court in later revocation of probation proceedings.[1] Douglas Birdsong entered an *Alford* plea to misdemeanor third degree sexual assault as part of a plea agreement that involved the dismissal of two class three felonies and one class four felony. The parties stipulated in writing to a probationary sentence including offense-specific treatment, which the court accepted. Accordingly, the court sentenced Birdsong to four years probation, conditioned upon the successful completion of an offense-specific treatment program. Birdsong's treatment providers ultimately terminated him from therapy because he continued to deny the sexual intent of his acts: the very objection that had caused him to enter an *Alford* plea. The trial court revoked Birdsong's probation and sentenced him to twenty-four months in county jail. On appeal, the court of appeals reversed the probation revocation. The court of appeals determined that Birdsong's plea was not valid because a term of his sentence was inconsistent with his *Alford* plea and the trial court had failed to advise him of the inconsistency. *See People v. Birdsong*, 937 P.2d 877, 878–79 (Colo.App.1996). We conclude that Birdsong's plea was valid and therefore reverse the judgment of the court of appeals.

## I.

Birdsong was originally charged with one count of sexual assault on a child, a class four felony; one count of sexual assault on a child by one in a position of trust, a class three felony; and one count of aggravated incest, also a class three felony.[2]

The criminal charges were based on allegations made by Birdsong's five-year-old daughter that he had touched her genitals under her clothes with his hands and feet. The child's mother reported the allegations

---

1. We granted certiorari to consider the following issue: "When a defendant who entered an *Alford* plea as part of an agreement whereby he received probation fails to comply with a condition of probation that he enter and successfully complete a sex offender specific treatment program, does the fact that he was not informed that such a program may require that he admit to having committed the offense preclude the court from revoking his probation?"

2. These counts alleged violations of sections 18–3–405(1), 18–3–405.3 and 18–6–302, 6 C.R.S. (1997), respectively.

to the Adams County Department of Social Services when the daughter returned from weekend visits with her father suffering from a rash in her vaginal area that worsened after subsequent visits.[3]

Birdsong originally pleaded not guilty to the charges and the court set the matter for a jury trial. However, on January 12, 1995, Birdsong pleaded guilty to third degree sexual assault, a first degree misdemeanor, in exchange for dismissal of the felony counts.[4] Birdsong maintained that the acts were not motivated by sexual gratification and thus entered an *Alford* plea pursuant to which he maintained innocence as to that element of the charge. At a January 12, 1995 providency hearing, the court found that it was familiar with the evidence in the case, that Birdsong had admitted to inappropriately touching his daughter, and that Birdsong acknowledged that there was sufficient evidence which if believed by a jury could result in a verdict of guilty on the felony charges. The court also specifically advised Birdsong that it would treat his *Alford* plea the same as a guilty plea for sentencing purposes. The court made detailed findings as to the factual basis for the guilty plea and accepted it.

The court imposed a four-year sentence of probation conditioned upon successful completion of offense-specific therapy. The conditions of Birdsong's probation stated, among other things:

> 7. You will obtain an evaluation, counseling or treatment for drug use, alcohol abuse, or mental conditions required by the court or probation officer. You will immediately enter, attend or remain in and successfully complete treatment as recommended in a specified facility or program and meet all financial obligations of that program. [part of pre-printed form]
>
> 12. You will enter, enroll, and successfully complete a sex offender specific treatment program. [handwritten addition]

By the time Birdsong entered his plea, he had already attended approximately one year of sex offender treatment at the Aurora Community Mental Health Center as part of his court-ordered treatment in the dependency and neglect action. He therefore continued with that treatment in order to comply with the conditions of probation in this case.

The sex offender treatment in which Birdsong was enrolled consisted of four phases. The first phase, the denial phase, was for offenders who denied either their acts or the sexual intent of their acts. Phases two, three and four were the actual treatment phases of the program. Completion of the program involved all four phases and typically took between two and five years.

Birdsong attended fifty-five sessions in the denial group, all the while acknowledging that he may have inappropriately touched his daughter, but denying that he did so for purposes of sexual gratification or pleasure. At the end of the denial phase of the program, the treatment team assessed Birdsong and determined that he was still in denial, and therefore was not suited to participate in the ensuing treatment phases of the program. Birdsong received no further treatment.

The People filed a complaint for revocation of Birdsong's probation on July 5, 1995. The court determined that Birdsong had not successfully completed the necessary treatment, and that he had therefore violated a condition of his probation. The court revoked his probation on December 21, 1995. At the postrevocation sentencing hearing, Birdsong moved for reconsideration of the revocation. Birdsong argued that because his treatment providers determined that he was not eligible for continued therapy, he had completed the offense-specific therapy and had not violated a condition of his probation. The court denied the motion.

---

**3.** Birdsong's alleged sexual contact with his daughter and other conduct involving both his daughter and son prompted the Adams County Department of Social Services to bring a dependency and neglect action against Birdsong, Case No. 93–JN155 (the dependency and neglect action). The court in the dependency and neglect action imposed an interim treatment plan on August 25, 1993, and a formal treatment plan on November 23, 1993.

**4.** Third degree sexual assault constitutes a violation of section 18–3–404, 6 C.R.S. (1997).

Birdsong told the court at the resentencing hearing that at the time he entered his *Alford* plea he knew that he would have to admit guilt in the treatment program even if he protested his innocence in his guilty plea. However, he said he thought his attorney had made a deal with the district attorney and the judge whereby he would only have to attend the denial phase of therapy. He further stated that even though the judge at the providency hearing stressed successful completion of the therapy program, he just went along with it "because I thought all of this was already taken care of." Birdsong said he thought the judge knew "that all I had to do was go through the denier's group and I didn't have to go through the other three [phases of the program]; therefore, when [the judge] asked me all of these questions I was just saying yes yes yes because I thought it was already taken care of."

In resentencing Birdsong to twenty-four months in the county jail with work release, the court explained:

> The bottom line is that probation is not a right, but rather a privilege, and in this particular situation there is an essential requirement in order to qualify for that privilege, and that requirement is that the person be amenable to treatment in the offense specific therapy program, otherwise there is no point in probation in these types of cases.

Birdsong appealed the revocation of his probation. On appeal, Birdsong argued that because he entered an *Alford* plea, the trial court erred in revoking his probation based on his refusal to admit guilt in the sexual offender treatment program. The court of appeals agreed and remanded the case to the trial court for further proceedings, relying in part on *People v. Walters*, 164 Misc.2d 986, 627 N.Y.S.2d 289 (Cty.Ct.1995), for the conclusion that the acceptance of an *Alford* plea was directly inconsistent with a finding that refusal to admit guilt constituted a probation violation. The court of appeals suggested that the trial court consider the following list of recommended options: (1) permit Bird-

song to withdraw the *Alford* plea and reinstate the charges; (2) permit Birdsong to continue on probation after the court determines that he understands and agrees to the successful completion of the deniers' phase and further understands and agrees to the requirement that successful completion will require him to admit his guilt as to all the elements of third degree sexual assault; or (3) permit Birdsong to continue on probation and eliminate his successful completion of the treatment program as a condition of probation. *See Birdsong*, 937 P.2d at 878.

■ We view the case differently from the court of appeals. An *Alford* plea is a guilty plea. As such, the trial court's obligations to advise the defendant were no greater than with any other guilty plea. Similarly, the trial court's concession to the defendant in accepting the *Alford* plea did not create an implicit agreement to permit him to continue on probation in the face of violation of the clear and reasonable conditions of that probation.

## II.

### A.

■ *Alford* pleas arose out of the United States Supreme Court decision *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). There the Court held that states could allow defendants to plead guilty even though they protested their innocence so long as their pleas were valid under standards set forth in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969),[5] and were supported by a factual basis. *See Alford*, 400 U.S. at 31, 91 S.Ct. at 164. In essence, an *Alford* plea permits a defendant to assert innocence as to one or more elements of the crime, but consent to the imposition of the conviction and penalty. If courts accept such pleas, they can convict and sentence defendants who enter them. *See id.* at 36–7, 91 S.Ct. 160.

The Court found that the characterization of Alford's plea as a guilty plea as opposed to

---

**5.** In *Boykin*, the Supreme Court held that for a guilty plea to be valid, the record must affirmatively show the defendant's plea was intelligent and voluntary. *See Boykin*, 395 U.S. at 242, 89 S.Ct. 1709.

a plea of nolo contendere was of no constitutional significance.[6] ˙t reasoned that the Constitution is concerned with the practical consequences, not the formal categorizations, of guilty pleas under state law. The Court concluded that an express admission of guilt "is not a constitutional requisite to the imposition of a criminal penalty." *Id.* at 37, 91 S.Ct. 160. Further, the Court reasoned that "an individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.*

Significantly, the Court perceived no material difference between a plea that refused to admit commission of the criminal act and a plea containing a protestation of innocence so long as the defendant intelligently concluded that his interests required entry of a guilty plea and the record before the judge contained strong evidence of actual guilt. *See id.*

### B.

■ The defendant argues that the plea was deficient because the trial court failed to advise him that he would have to admit guilt in order to complete treatment, and failure to complete treatment would result in a revocation of probation. However, the specific requirements of a treatment program and the harmony between those requirements and the defendant's perception of his guilt does not fall within the aegis of the trial court's necessary advisement to the defendant.

■ Rather, the trial court must advise the defendant of the direct consequences of the conviction to satisfy the due process concerns that a plea be made knowingly and with a full understanding of the consequences thereof. *See People v. Pozo,* 746 P.2d 523, 526 (Colo.1987); *see also People v. Hrapski,* 718 P.2d 1050, 1055–56 (Colo.1986); *People v. Adrian,* 701 P.2d 45, 47–8 (Colo. 1985). Accordingly, a guilty plea is not rendered invalid by a trial court's failure to warn

a defendant of the collateral consequences of his guilty plea. *See Pozo,* 746 P.2d at 526.

■ Direct consequences are those which have definite, immediate and largely automatic effect on the range of possible punishment. *See People v. Ruiz,* 935 P.2d 68, 69 (Colo.App.1997). "The essential element defining a 'direct consequence' of a guilty plea is that it have an effect on the range of punishment." *Id.* Our courts have found the maximum penalty to which a defendant could be sentenced for a particular conviction, *see People v. Moore,* 841 P.2d 320, 324 (Colo. App.1992); and the imposition of a mandatory period of parole, *see People v. Coleman,* 844 P.2d 1215, 1219 (Colo.App.1992), to be direct consequences.

In contrast, this court has found that the possible use of a guilty plea in future proceedings and potential federal deportation consequences are collateral consequences. *See People v. Heinz,* 197 Colo. 102, 106, 589 P.2d 931, 933 (1979), and *Pozo,* 746 P.2d at 526. Similarly, a defendant's prison security classification is a collateral consequence. *See Ruiz,* 935 P.2d at 69–70.

Here, the possibility that Birdsong's probation would be revoked if he continued to maintain innocence as to his motives for the inappropriate contact with his daughter is not a direct consequence. Viewed from the perspective of the time of the providency hearing, revocation would certainly not be automatic, for an individual might be willing to admit to something in a therapeutic setting but not in a court of law. Additionally, we do not expect a trial court to maintain working familiarity with all requirements of certain types of treatment programs so as to be able to advise defendants with particularity about those requirements before accepting pleas that involve probation. That responsibility falls to the defendant and his or her counsel.

### C.

Here, the trial court specifically advised Birdsong at the providency hearing that the

---

**6.** A plea of nolo contendere is a plea by which a defendant waives his right to trial and authorizes the court to treat him as if he were guilty for purposes of that case. *See Alford,* 400 U.S. at 35, 91 S.Ct. 160.

charge of third degree sexual assault carried a possible sentence to the county jail of up to two years. In the written conditions of probation, the trial court required Birdsong to successfully complete offense-specific therapy. When Birdsong violated that condition of his probation, the court sentenced him to twenty-four months in county jail. Thus, the condition of Birdsong's probation had no effect on the range of his punishment and hence was not a direct consequence. *See Coleman*, 844 P.2d at 1219 (concluding that because length of defendant's total sentence, including period of parole, was less than maximum he was told he could receive, court's failure to advise defendant of mandatory parole did not render plea involuntary).

### D.

Birdsong also argues that the written condition of probation requiring him to complete a sex offender treatment program successfully is inconsistent with the plea agreement reached between the parties. Birdsong maintains that the plea agreement required only that he be evaluated and complete any treatment "recommended by the treatment providers." He argues that once he completed the denial phase of the program, no additional treatment was recommended.

We find two flaws in Birdsong's argument. First, Birdsong signed the document setting forth the successful completion of treatment as a condition of probation. If he had wished to challenge that condition as inconsistent with his plea agreement, he could have moved to withdraw his plea prior to the imposition of sentence. *See* Crim. P. 32(d); *People v. Chippewa*, 751 P.2d 607, 609 (Colo. 1988)("Crim.P. 32(d) provides for a motion to withdraw a plea of guilty before sentence is imposed."). He did not do so.

Similarly, Birdsong has never filed a motion for postconviction relief seeking to vacate his plea on the basis that he mistakenly and detrimentally relied upon a plea agreement that differed from the terms and conditions of probation.[7]

At a probation revocation hearing, "[t]he issues for determination ... are whether the defendant has violated a valid condition of his or her probation and, if so, what action is appropriate in light of the violation." *People v. Ickler*, 877 P.2d 863, 866 (Colo.1994). Birdsong did not seek to withdraw the plea at the time of the revocation hearing. Accordingly, the trial court was well within its discretion to proceed with the merits of the question of whether Birdsong had violated his probation.

### E.

Birdsong lastly argues that by accepting the *Alford* plea, the court was precluded from later revoking his probation for the same refusal to admit guilty intent. To the contrary, the court specifically informed Birdsong that the plea would be treated as a guilty plea for sentencing purposes. The trial court accepted the *Alford* plea as a concession to the defendant, with no implications or assurances as to future revocation proceedings.

The Wisconsin Court of Appeals reached the same conclusion in *State ex rel. Warren v. Schwarz*, 211 Wis.2d 708, 566 N.W.2d 173 (App.1997), a factually similar case decided on due process grounds.[8] We find the *Warren* court's reasoning to be persuasive here.

In *Warren*, the defendant was convicted of first degree sexual assault on a child following the entry and acceptance of an *Alford* plea. *See id.*, 566 N.W.2d at 174. Before accepting Warren's plea, the court advised him that in the event he was granted probation, he would have an obligation to enter into counseling in good faith. *See id.* However, the court did not advise Warren that he would have to admit guilt in such counseling. The court imposed a five-year sentence which it stayed in favor of an eight-year

---

7. We accepted certiorari on the question of whether Birdsong's probation could be revoked under the circumstances of this case. We do not comment on whether Birdsong has a basis upon which he could file a motion for postconviction relief.

8. Warren apparently filed a motion for postconviction relief in which he argued that he would not have entered an *Alford* plea had he known he would have to admit guilt in court ordered counseling. *See Warren*, 566 N.W.2d at 178 n. 3.

term of probation. *See id.* at 175. The court conditioned Warren's probation on his cooperation with and completion of any counseling ordered by the department of corrections. *See id.* The department of corrections, acting under statutory authority, revoked Warren's probation when he was terminated from counseling because he repeatedly denied any culpability for the acts underlying the conviction. *See id.* The trial court affirmed the revocation, concluding that the requirement that Warren successfully complete sexual offender treatment was "a reasonable requirement necessary for the protection of the public and for Warren's rehabilitation and served a legitimate penological objective." *Id.* at 175–76.

Warren appealed, contending that by accepting his *Alford* plea, the court somehow condoned his declaration of innocence and implicitly assured that he would not be punished for maintaining his innocence. Warren contended that the department of corrections violated this assurance when it revoked his probation for failing to admit commission of the crime in the treatment required as a condition of his probation. *See id.* at 177.

The court held that the acceptance of an *Alford* plea does not imply a promise or assurance of anything.

> More accurately stated, an *Alford* plea, if accepted by the court, permits a conviction without requiring an admission of guilt and while permitting a protestation of innocence. There is nothing inherent in an *Alford* plea that gives the defendant any rights, or promises any limitations, with respect to the punishment imposed after the conviction.

*Id.*

We find this reasoning to be wholly consistent with that expressed by the Supreme Court in *Alford.* An *Alford* plea is to be treated as a guilty plea and a sentence may be imposed accordingly. *See Alford,* 400 U.S. at 37, 91 S.Ct. 160.

### III.

Hence, we conclude that by accepting the *Alford* plea, the trial court did not in any way obviate later revocation proceedings for fail-

ure to admit guilt in a therapeutic context. We reverse the court of appeals and direct the reinstatement of the trial court's probation revocation order and associated jail sentence.

Justice SCOTT concurs and specially concurs in the judgment.

I agree with the majority that Douglas Birdsong's plea was valid and, therefore, the trial court correctly revoked Birdsong's probation. Thus, the court of appeals, I agree, must be reversed. However, I would do so because Birdsong had actual knowledge of the sex offender treatment program. Unlike the majority, though, in my view, it is unnecessary to the resolution of this case that we analyze whether the fact that Birdsong's probation would be revoked if he continued to maintain innocence is a direct or collateral consequence of the conviction. Accordingly, I concur in the judgment of the majority. While I agree with much that the majority opinion states, I do not join in parts IIB and IIC of the majority opinion.

Under *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the test for determining the validity of a guilty plea is whether the plea was made voluntarily and knowingly. *See also People v. Pozo,* 746 P.2d 523, 526 (Colo.1987); *Harshfield v. People,* 697 P.2d 391, 393 (Colo.1985). Here, Birdsong voluntarily and knowingly entered into an *Alford* plea. At the January 12, 1995, providency hearing, Birdsong admitted to inappropriately touching his daughter, and acknowledged that there was sufficient evidence to support a guilty verdict. The trial court made detailed findings as to the factual basis for Birdsong's plea, and accepted it.

As part of the plea agreement, the court imposed a four-year sentence of probation conditioned upon, among other things, successful completion of a sex offender treatment program. At the time that Birdsong entered his plea and as part of a court-ordered treatment in an earlier dependency and neglect action, Birdsong had already attended approximately one year of sex offender treatment at the Aurora Community Mental Health Center. To comply with the conditions of probation in this case, Birdsong

continued with that treatment. Birdsong, therefore, had actual knowledge of the details of the sex offender treatment program *before* he entered his *Alford* plea. That is, Birdsong had actual knowledge at the time of his plea that the program required participants to admit that they engaged in inappropriate sexual contact. Therefore, because Birdsong voluntarily and knowingly entered his guilty plea with actual knowledge of the details of the sex offender treatment program, and then violated the plea agreement by not completing the program, he cannot now disavow such knowledge and claim that the trial court erred in revoking his probation.

It follows, therefore, in my view, that further analysis as to whether Birdsong's probation is a direct or collateral consequence of the conviction is unnecessary to a resolution of this case. While I do not disagree that such analysis would certainly be appropriate if Birdsong did not have actual knowledge of the conditions of his sentence and of the requirements of the treatment program, in this case, I would not reach that discussion.

*People v. Walters*, 164 Misc.2d 986, 627 N.Y.S.2d 289 (Cty.Ct.1995), is illustrative. There, the court reversed an order revoking Walter's probation for failure to admit to guilt in a sex offender treatment program. Walters was originally charged with a felony sex offense but entered an *Alford* plea of guilty to a misdemeanor sex abuse charge. The defendant attended court-ordered sex offender treatment until he was terminated for persisting in his denial of guilt. Noting that at the time he entered his plea the defendant had not been advised that he would be required to admit to guilt in order to successfully complete the sex offender treatment program, the *Walters* court reasoned that the acceptance of defendant's *Alford* plea was "directly inconsistent" with a finding that his refusal to admit guilt in counseling constituted a probation violation. *Walters*, 627 N.Y.S.2d at 291.

The court of appeals assumed that the instant case was factually similar to *Walters*. The court concluded that in both cases, defendant was not informed that admitting guilt was a necessary prerequisite for suc-

cessful completion. Accordingly, the court of appeals concluded that in such a scenario: "it [i]s the trial court's obligation to advise the defendant of that requirement before the court accept[s] the *Alford* plea."

*Walters*, however, is distinguishable. While in both cases the trial court failed to give the proper advisement, here, Birdsong was not in need of such an advisement. Unlike the defendant in *Walters*, Birdsong had actual knowledge of the requirements of the sex offender treatment program; in fact, he was already an active participant in the program at the time of his plea.

In sum, in my view, even though Birdsong may not have been specifically informed of the probation requirement at issue, because he had actual knowledge, the absence of such an advisement should be of no legal consequence. Generally, of course, the trial court should have informed Birdsong of the details of the program—specifically, that the program required him to admit that he engaged in inappropriate sexual contact—whether or not such details constituted direct or collateral consequences of the conviction. But where a defendant has actual knowledge, I would not fault a trial court for its failure to undertake a futile act. Only where an accused has not been informed, and has no actual knowledge of the requirement at issue, is further analysis regarding direct or collateral consequences of the conviction necessary.

Accordingly, I see no need to join in a discussion of direct or collateral consequences, but, nonetheless, join in the judgment of the majority.