Present: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Carrico, S.J.

TYRONE ORLANDO PEYTON

OPINION BY
v.  Record No. 032464      JUSTICE LAWRENCE L. KOONTZ, JR.
                               November 5, 2004
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA


In this appeal, we consider whether the Court of Appeals of Virginia erred in determining that a trial court did not abuse its discretion in revoking the suspended sentence of a defendant who had been placed in an alternative sentencing program pursuant to Code § 19.2-316.2, but was unable to complete the program due to an unforeseen medical condition.

BACKGROUND

The material facts are not in dispute. On April 3, 2001, Tyrone Orlando Peyton was convicted of possession of cocaine with intent to distribute in violation of Code § 18.2-248 in the Circuit Court of Henrico County (the trial court). On July 12, 2001, the trial court sentenced Peyton to ten years in prison and suspended seven years of that sentence. The trial court further ordered that the Department of Corrections (the Department) evaluate Peyton to determine his suitability for participation in the Detention Center Incarceration Program pursuant to Code § 19.2-316.2. Upon the favorable recommendation of the Department and the determination by the

trial court that Peyton would benefit from the program, the trial court suspended the balance of Peyton's sentence and placed him on probation conditioned upon his entry into and successful completion of the program. On October 1, 2001, he was transferred from local confinement to a designated residential detention center maintained by the Department.

On January 11, 2002, Peyton began vomiting blood while at the detention center and was taken to the hospital. At that time, approximately one month remained for Peyton to complete the requirements of the program. When Peyton returned from the hospital, he continued to have abdominal pain. Peyton was removed from the program by the Department on January 15, 2002 for "medical/psychological reasons."

The trial court subsequently held a show cause hearing on February 7, 2002 and determined that Peyton had violated the terms and conditions of his suspended sentence by not completing the program. Although the trial judge acknowledged that he did not question the "sincerity" of Peyton's desire to complete the program, he stated that "I don't think there's anything I can do" because the alternative sentencing program "didn't work out." By order entered on February 11, 2002, the trial court revoked the suspended sentence and imposed the original three year active sentence, crediting Peyton with time served. By

order entered on February 27, 2002, the trial court denied Peyton's motion to reconsider.

Peyton timely filed a petition for appeal in the Court of Appeals in which he contended that the trial court abused its discretion in revoking his suspended sentence because his discharge from the detention center was not due to his willful conduct or behavior. The Court of Appeals granted Peyton an appeal.

In a decision by a divided three-judge panel, the Court of Appeals affirmed the judgment of the trial court. Peyton v. Commonwealth, 41 Va. App. 356, 362, 585 S.E.2d 345, 348 (2003). Initially, the majority of the panel noted that trial courts are granted broad discretion by Code § 19.2-306 to revoke suspended sentences and probation. It then further noted that, with respect to the detention center program, Code § 19.2-316.2(A)(2) requires a prospective participant to meet certain physical and emotional requirements as a condition for acceptance and participation in the program and that Code § 19.2-316.2(A)(4) permits the trial judge to revoke all or part of a suspended sentence upon a finding that a defendant has been removed from a detention center program by the Department for "intractable behavior" as such is defined in Code § 19.2-316.1. Id. at 358-60, 585 S.E.2d at 346-47. Reasoning that the record supported the conclusion that Peyton no longer met the physical and/or

3

emotional requirements for participation in the detention center program and, thus "did not have the ability to conform his behavior to that necessary to complete the program," the majority of the panel held that the trial court did not abuse its discretion when it revoked Peyton's suspended sentence. Id. at 361, 585 S.E.2d at 347.

The dissenting judge initially noted that while broad, the power of a trial court to revoke a suspended sentence is not unlimited because "[b]y well established rules of decision the cause deemed by the court to be sufficient for revoking a suspension must be a reasonable cause." Id. at 362, 585 S.E.2d at 348 (Benton, J., dissenting) (internal quotation marks omitted). Reasoning that Peyton's failure to complete the detention program resulted from a medical inability to continue in the program rather than from an unwillingness or refusal to do so, the dissenting judge concluded that Peyton's illness was not a reasonable cause for revocation and, thus, the trial court abused its discretion in revoking Peyton's suspended sentence. Id. at 364, 585 S.E.2d at 349.

We awarded Peyton an appeal from the judgment of the Court of Appeals.

## DISCUSSION

Before considering the specific statutes applicable to the facts of the present case, we briefly review the general

4

statutory scheme relating to the suspension of sentence, probation, and revocation that operates in conjunction with those statutes.  In essence, Code § 19.2-303 permits the trial court, after conviction, to suspend all or part of a sentence and to place the defendant on probation "under such conditions as the court shall determine."  Code § 19.2-306 addresses the trial court's authority to respond to a violation of those conditions by the defendant and permits it to revoke the suspended sentence "for any cause the court deems sufficient" that occurs within the probation period, within the period of suspension, or, if neither is fixed, within the maximum period for which the defendant might originally have been sentenced to be imprisoned.

Statutes that permit the trial court to impose alternatives to incarceration, such as probation or conditionally suspended sentences, are highly remedial and should be liberally construed to provide trial courts valuable tools for rehabilitation of criminals.  See, e.g., Grant v. Commonwealth, 223 Va. 680, 684, 292 S.E.2d 348, 350 (1982); Dyke v. Commonwealth, 193 Va. 478, 484, 69 S.E.2d 483, 486 (1952).  Accordingly, we have held consistently that "revocation of a suspended sentence lies in the discretion of the trial court and that this discretion is quite broad."  Hamilton v. Commonwealth, 217 Va. 325, 326, 228 S.E.2d 555, 556 (1976).  Nonetheless, we have required that

5

"[t]he cause deemed by the court to be sufficient for revoking a suspension must be a reasonable cause. . . . The discretion required is a judicial discretion, the exercise of which 'implies conscientious judgment, not arbitrary action.' " Marshall v. Commonwealth, 202 Va. 217, 220, 116 S.E.2d 270, 273 (1960) (quoting Slayton v. Commonwealth, 185 Va. 357, 367, 38 S.E.2d 479, 484 (1946)); see also Hamilton, 217 Va. at 327, 228 S.E.2d at 556; Griffin v. Cunningham, 205 Va. 349, 354, 136 S.E.2d 840, 844 (1964).

Consistent with the above described statutory scheme, the General Assembly has enacted additional statutes providing alternative sentencing sanctions to the trial courts in the form of a state-wide community based system of programs established and maintained by the Department. Code § 53.1-67.3. One such program consists of residential detention centers designed "to provide a highly structured, short-term period of incarceration for individuals committed to the Department under the provisions of § 19.2-316.2. The program shall include components for military-style management and supervision, physical labor in organized public works projects, counseling, remedial education, substance abuse testing and treatment, and community re-entry services." Code § 53.1-67.8.

As pertinent to the present case, before a defendant who otherwise would have been sentenced to incarceration for a

6

nonviolent felony, such as the felony for which Peyton was convicted, can be accepted into the Detention Center Incarceration Program, Code § 19.2-316.2(A)(1) requires that he undergo "evaluation and diagnosis by the Department to determine suitability for participation in the Detention Center Incarceration Program. The evaluation and diagnosis shall include a complete physical and mental evaluation of the defendant." The statute further provides that upon receipt of a favorable recommendation by the Department and a determination by the trial court that the defendant will benefit from the program and "is capable of returning to society as a productive citizen," the court "shall impose sentence, suspend the sentence, and place the defendant on probation . . . . Such probation shall be conditioned upon the defendant's entry into and successful completion of the Detention Center Incarceration Program." Code § 19.2-316.2(A)(3).

Consistent with the authority granted to the trial court under Code § 19.2-306 to respond to a violation of the conditions of a suspended sentence by the defendant, Code § 19.2-316.2(A)(4) provides that:

> Upon the defendant's (i) voluntary withdrawal from the program, (ii) removal from the program by the Department for intractable behavior as defined in § 19.2-316.1, or (iii) failure to comply with the terms and conditions of probation, the court shall cause the defendant to show cause why his probation and suspension of sentence should not be revoked.

7

> Upon a finding that the defendant voluntarily withdrew from the program, was removed from the program by the Department for intractable behavior, or failed to comply with the terms and conditions of probation, the court may revoke all or part of the probation and suspended sentence and commit the defendant as otherwise provided in this chapter.

The Commonwealth does not contend, nor does the record support, that Peyton voluntarily withdrew from the detention center program.  The Department, however, is permitted to remove a defendant from this program for intractable behavior.  In pertinent part, Code § 19.2-316.1 defines "intractable behavior" to mean "that behavior which, in the determination of the Department of Corrections, . . . indicates an inmate's unwillingness or inability to conform his behavior to that necessary to his successful completion of the program."  By reference, this definition is incorporated into the provisions of Code § 19.2-316.2(4).  Stressing the term "inability," the Commonwealth contends that this definition of intractable behavior does not require a finding of willfulness.  Rather, because the detention center program requires a defendant to meet certain physical and mental requirements for acceptance into the program, the Commonwealth contends that a defendant "is expected to maintain that physical and emotional suitability for the duration of the program."  Because the Department removed Peyton from the program upon its determination that for "medical/psychological reasons" he was unable to conform his

behavior to that necessary for the successful completion of the program, the Commonwealth maintains that the trial court had the authority to revoke his suspended sentence, and the Court of Appeals properly affirmed the trial court's judgment to do so.

We do not disagree with the Commonwealth's basic premise that a defendant, such as Peyton, who receives the benefit of having his sentence suspended and being placed on probation conditioned upon entering and completing an alternative sentencing program, such as a detention center program, has a responsibility to comply with the terms and conditions of his suspended sentence.  Moreover, we agree with the Court of Appeals' conclusion that neither the Department nor the trial court was required to continue Peyton in the detention center program when Peyton at no fault of his own was no longer physically, or mentally, suited for the program.  Peyton, 41 Va. App. at 360, 585 S.E.2d at 347.  However, Peyton's removal from the program under such circumstances does not resolve the question whether the trial court abused its discretion by revoking Peyton's suspended sentence without considering reasonable alternatives to imprisonment.

There is surely a distinction between the willful failure of an inmate to comply with the requirements of the detention center program and the conditions of his suspended sentence permitting his participation in that program and the subsequent

9

inability of the inmate to do so resulting from an unforeseen medical condition. While in either case the inmate necessarily will be subjected to a show cause hearing at which the trial court has the discretion to revoke all or part of the inmate's suspended sentence, the proper exercise of that discretion in the latter case requires the trial court to consider all the circumstances, including recognition that the inmate's removal from the program was not the result of the inmate's behavior or conduct.

Here, the record shows that the trial court either merely considered Peyton's medical condition as satisfying the definition of intractable behavior or presumed that it had no option but to revoke Peyton's suspended sentence because the detention program "didn't work out." Clearly, however, the trial court revoked Peyton's suspended sentence without considering reasonable alternatives to imprisonment even while expressly finding that Peyton's failure to complete the program was caused by his medical condition and was contrary to his desire to continue in the program. Under those circumstances, the trial court's action was an abuse of discretion.

CONCLUSION

For these reasons, we hold that the Court of Appeals erred in affirming the judgment of the trial court. We will reverse the judgment of the Court of Appeals, and we will remand the

10

case to that Court with direction to remand the case to the trial court for further proceedings consistent with the view expressed in this opinion.

<u>Reversed and remanded</u>.