COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


JAMES CARROLL
                                                            OPINION BY
v.        Record No. 1860-08-4                    JUDGE JAMES W. HALEY, JR.
                                                         SEPTEMBER 1, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                            Benjamin N.A. Kendrick, Judge

            Clarence F. Stanback, Jr., for appellant

            Richard B. Smith, Special Assistant Attorney General (William C.
            Mims, Attorney General, on brief), for appellee.


        James Carroll ("Carroll") argues that 1) the trial court erred in finding that he violated the

conditions of his probation by refusing to admit that he committed the crime charged during

court-ordered sex offender treatment because he had entered his guilty plea while asserting his

innocence pursuant to North Carolina v. Alford, 400 U.S. 25 (1970); and 2) the trial court abused

its discretion in denying his request for individual therapy in lieu of the court-ordered sex

offender treatment program.  For the following reasons, we affirm.

                                          FACTS

        On September 6, 2007, pursuant to a plea agreement with the Commonwealth, Carroll

entered a guilty plea to rape in violation of Code § 18.2-61 while asserting his innocence

pursuant to the United States Supreme Court's decision in Alford, 400 U.S. 25.  The trial court

accepted Carroll's Alford plea of guilty, and continued the case for five years.  Under the

conditions of the agreement, Carroll was required to be on active probation during the five years.

If, during the five years, Carroll remained of general good behavior, had no contact with the

victim or her family, and paid his court costs, the Commonwealth agreed, at the end of the five years, to ask the trial court to vacate the plea of guilty and accept instead a guilty plea to assault and battery in violation of Code § 18.2-57.

During Carroll's guilty plea hearing, the trial court asked him several questions about whether he understood his <u>Alford</u> plea.

| | |
|---|---|
| THE COURT: | What is an Alford plea? |
| [DEFENDANT]: | It's a plea where you're pleading guilty, sir, and – |
| THE COURT: | No, you're not pleading guilty. |
| [DEFENDANT]: | Well, what the plea is, it says that the prosecutor feels he has enough evidence to convict me even though I don't think I'm guilty of the crime. |
| THE COURT: | And you don't want to take that chance. |
| [DEFENDANT]: | Correct. |
| THE COURT: | In other words, you didn't want to roll the bones. |
| [DEFENDANT]: | I don't play the lottery. |
| THE COURT: | Excuse me? |
| [DEFENDANT]: | I don't play the lottery. |
| THE COURT: | Okay.  Now, do you realize – *do you understand that the legal consequences of an Alford plea are the same as a guilty plea or a finding of guilt?* |
| [DEFENDANT]: | That's what I'm told. |
| THE COURT: | *But do you understand that?* |
| [DEFENDANT]: | *I understand as best that I have from what my attorney has told me, yes, sir.* |
| THE COURT: | Did you need more time to talk to your attorney? |
| [DEFENDANT]: | No, sir.  I mean, he's explained it to me. |

> THE COURT: Well, then, do you understand what he's saying to you?
>
> [DEFENDANT]: Yes, sir.
>
> THE COURT: I have to be convinced that you know what you're doing.
>
> [DEFENDANT]: *Yes, sir. I know what I'm doing.*

(Emphasis added).

The trial court then accepted Carroll's plea and continued the case to September 14, 2012. One provision of the trial court's order was that: "The Defendant shall comply with all the rules and requirements set by the Probation Officer. Probation shall include *any* substance abuse counseling, testing, and/or treatment as prescribed by the Probation Officer." On October 9, 2007, Carroll again appeared in court for a hearing on his motion to amend provisions of the sentencing order. Carroll's motion asked the court for an order that his probation be administered and supervised by the Arlington County probation office, that his travel within the Commonwealth be unrestricted to accommodate his work as a realtor, and that no sex offender treatment be required. The court issued an order October 30 of the same year, granting the motion in part. The court agreed that Carroll's probation could be supervised from Arlington – it had previously been supervised from Fairfax – and left any travel restrictions to the discretion of Carroll's probation officer. The order also states that, "any sex offender treatment is to be determined by the Defendant's supervising Probation Officer."

After this hearing, Carroll enrolled at the Center for Clinical and Forensic Services, Inc. (CCFS) for sex offender treatment. On May 7, 2008, Cynthia Urick, of CCFS, wrote a letter to Carroll's probation officer. According to the letter:

> When Mr. Carroll began treatment at CCFS, he was placed in Phase 1 of the process. During this component of treatment, offenders are introduced to foundational concepts associated with sex offender treatment (e.g. Denial and Consent) and are required to

present full disclosure of their referral offense and sexual history. In addition, the polygraph is used as a treatment tool to verify the offender's self-reported history. When Mr. Carroll began services at CCFS, he denied all accounts of the offense he was convicted of and indicated that he was "set up" by his ex-wife. Efforts to engage him in discussions about the offense did not produce a change in his position. In fact, he became hostile and resistant when asked about the specific details. As a result, he was referred for an instant offense polygraph, which he took on March 28, 2008. On the exam, he denied questions related to ever having sexual intercourse or sexual contact with his stepdaughter and the result was "deception indicated." Subsequent to the exam, Mr. Carroll was again presented with several opportunities to take responsibility for the offense but he failed to do so.

\*    \*    \*    \*    \*    \*    \*

Mr. Carroll has been in treatment for approximately two months and has made no forward progress regarding accepting responsibility for the crime for which he was convicted. Insofar as there is no indication that he will make the needed change, Mr. Carroll is being unsuccessfully discharged for lack of amenability.

The court issued a bench warrant for Carroll's arrest for violating the conditions of his probation and, on June 13, 2008, held a hearing on the allegations. Carroll's attorney denied that he was in violation, and the court heard evidence from the probation office, including the letter from CCFS describing the reasons for Carroll's discharge from the program. The court announced that it did not consider the part of the letter referring to polygraph testing. At the close of the evidence, Carroll argued that he was not in violation of his probation because of the trial court's acceptance of his Alford plea. He did not argue that the court could not find him in violation because of the terms of any plea agreement. The trial court found Carroll in violation of his probation, convicted him of the rape charge, sentenced him to five years in prison, with all five years suspended, and ordered him to complete five years of supervised probation and to successfully complete sex offender treatment.

- 4 -

Carroll also argued that the court should order individual therapy. His attorney proffered that Dr. Stan Saminov, who holds a Ph.D and has dealt with sex offense cases before, would be willing to provide treatment for Carroll. Instead of ordering individual therapy, the court's order requires Carroll to "enter and complete sex offender treatment as required by his Probation Officer."

ANAYLSIS

I.

Scope of the Issues Presented for Review

The greater part of the dissent's criticism of our decision concerns the terms of the plea agreement Carroll made with the Commonwealth. This agreement was recorded in a written document, signed by the parties, that includes an integration clause stating that "I understand that the judge will not enforce any agreement not written down here." Sex offender treatment is not mentioned anywhere in this document. The dissent argues that the trial court's decision to find Carroll in violation of his probation was, itself, a violation of the plea agreement's terms, and therefore, was error. We note, with respect, the argument advanced by the dissent is not before us for resolution.

The reason we may not consider the plea agreement terms is that they are not a basis for reversal permitted by our Rules of Court. According to Rule 5A:12(c): "Only questions presented in the petition for appeal will be noticed by the Court of Appeals." Carroll petitioned for, and was granted, an appeal on the following two questions:

> 1) Whether the trial court erred in finding Appellant in violation of probation based solely on Appellant's refusal to admit to rape during sex offender therapy given the fact that the Commonwealth agreed to and the court accepted an Alford plea?
>
> 2) Whether the trial court erred in not considering a reasonable alternative treatment modality (sex offender

treatment with an expert forensic psychologist) in lieu of probation revocation coupled with the condition of successfully completing the same program from which appellant was terminated?

Neither question asks us to consider whether the trial court's decision finding that Carroll was in violation of his probation was a breach of the terms of the plea agreement Carroll made with the Commonwealth. Accordingly, the dissent's emphasis on the general rule that plea agreements are enforced under contract principles, while correct as a statement of the law, see Wright v. Commonwealth, 275 Va. 77, 80-82, 655 S.E.2d 7, 9-10 (2008), does not, we respectfully conclude, speak to the questions presented.

The dissenting opinion's discussion of the plea agreement suggests, however, that its terms are *necessarily* connected to our resolution of the first of Carroll's questions presented. Specifically, the dissent adduces "two important reasons" for disagreeing with our conclusion:

(1) there is a fundamental inconsistency between appellant's claim of innocence implicit in his making a *plea agreement* to the underlying charge pursuant to Alford and a subsequently and unilaterally imposed probation condition requiring that appellant *admit* to the same charge during sex offender treatment; and (2) the *plea agreement* in the instant case, which by its very nature is a contract entered into by the Commonwealth and appellant and approved by the trial court, contained no probation condition that the appellant sacrifice his contractual prerogatives under his Alford plea and *admit* to the underlying charge in sex offender treatment.

Infra at 20-21.

We agree that the dissent presents two separate arguments: (1) that the trial court's finding that Carroll was in violation of his probation was error because Carroll's Alford plea gave him an enforceable prerogative to maintain his innocence; and (2) that the same finding was error because the terms of Carroll's plea agreement gave him an enforceable prerogative to maintain his innocence. The dissent describes these separate arguments in successive clauses, each of which assigns importance both to the Alford plea *and* the plea agreement. Thus, the

- 6 -

dissent reasons that these arguments are logically intertwined and legally inseparable, that is, that one cannot reach the merits of the <u>Alford</u> plea question narrowly raised on appeal without first resolving the merits of the plea agreement question, which is, simply stated, not before us for resolution. Our analysis follows.

We know the plea agreement's terms have no necessary connection to the issue of Carroll's <u>Alford</u> plea because, under the contract principles relied upon by the dissent, the argument – 1) that the agreement was recorded in a written document; 2) that the document included an integration clause stipulating that all the terms of the agreement were in the document; and 3) that the document contained no specific requirement that Carroll undergo sex offender treatment or admit his guilt during that treatment – would be an equally valid argument, *even if Carroll had entered a standard, non-<u>Alford</u>, guilty plea and admitted that he committed the offense*. What the two arguments have in common is that each attacks the same ruling of the trial court. However, we do not believe that is a sufficient connection to meet the requirement of Rule 5A:12(c). <u>See</u> <u>Clifford v. Commonwealth</u>, 274 Va. 23, 645 S.E.2d 295 (2007).

In <u>Clifford</u>, the defendant objected in the trial court to its refusal to allow him to cross-examine the complaining witness about a prior complaint of sexual abuse against another person, not the defendant. At trial, the defendant argued such questioning should be permitted, despite the Rape Shield statute, because such questioning tended to show the complaining witness had access to law enforcement, and yet did not make a contemporaneous complaint about the defendant's conduct. <u>Id.</u> at 23, 645 S.E.2d at 296. Our Supreme Court held that this argument could not be considered as part of the separate argument, made in defendant's petition for appeal, that, because the person accused in the alleged victim's prior complaint was later acquitted, the defendant had a constitutional right to cross-examine his accuser about the prior false accusations. <u>Id.</u> at 25, 645 S.E.2d at 297. <u>See</u> <u>also</u> <u>Lay v. Commonwealth</u>, 50 Va. App.

330, 336, 649 S.E.2d 714, 716-17 (2007) (In appeal of breaking and entering conviction, Rule 5A:12(c) prevented this Court from reviewing the sufficiency of the evidence under a constructive breaking theory because defendant's question presented asked whether evidence was sufficient to prove an actual breaking.).

However, the application of Rule 5A:12(c) is not uniformly rigid. See Moore v. Commonwealth, 276 Va. 747, 668 S.E.2d 150 (2008). In Moore, our Supreme Court reversed the decision of the *en banc* Court of Appeals, Moore v. Commonwealth, 51 Va. App. 1, 654 S.E.2d 305 (2007), that Rule 5A:12(c) barred us from reviewing the trial court's denial of the defendant's motion to suppress the fruits of a police stop of his vehicle, where the parties argued the question of whether the police officer had "a reasonable, articulable suspicion" to make the stop before the trial court and before a panel of this Court, but where the question presented in the defendant's brief framed the issue as whether the trial court erred in finding that the stop was supported by the higher standard of probable cause. Moore, 276 Va. at 754-56, 668 S.E.2d at 154-55. A majority of the *en banc* Court of Appeals had concluded that consideration of the suppression issue on appeal was barred because the defendant misstated the applicable legal standard in his question presented. Moore, 51 Va. App. at 3-4, 654 S.E.2d at 306. It is not clear that the Supreme Court entirely adopted the view of the *en banc* dissenting opinion; since the Supreme Court's opinion stresses the argument that the Attorney General waived any right to rely on Rule 5A:12(c) by rephrasing the standard as one of reasonable suspicion in his own brief, Moore, 276 Va. at 756, 688 S.E.2d at 155, and did not proceed to analyze whether the reasonable suspicion question was "subsumed" within the probable cause issue raised in the defendant's petition. In this case, the Commonwealth's brief did not rephrase any of Carroll's questions presented.

Even if we assume that the <u>Moore</u> dissent correctly analyzed the 5A:12(c) issue, an issue apparently not reached by the Supreme Court decision that is binding on us, the Rule would still bar our consideration of the terms of Carroll's plea agreement. In distinguishing <u>Clifford</u> and <u>Selph v. Commonwealth</u>, 48 Va. App. 426, 632 S.E.2d 24 (2006), from the issues raised in <u>Moore</u>, the dissent wrote:

> Here, the question whether reasonable suspicion for the stop existed was subsumed within the probable cause assignment of error because the same evidence was involved and the only difference in the legal analysis was whether that evidence met the "lesser" legal standard of reasonable suspicion rather than the "greater" legal standard of probable cause.

<u>Moore</u>, 51 Va. App. at 8, 654 S.E.2d at 308 (Elder, J., joined by Felton, C.J., and Beales J., dissenting). Unlike the issues in <u>Moore</u>, the plea agreement and <u>Alford</u> plea questions do not involve the same evidence; the former requires attention to the text of the written agreement, and the latter does not. Nor do the questions require similar legal analyses. As the dissent acknowledges, plea agreements are governed by contract principles. The <u>Alford</u> plea issue, however, requires instead a close analysis of the United States Supreme Court's <u>Alford</u> decision and the cases interpreting it. Even under the most flexible interpretation arguably supported by our Rule 5A:12(c) precedents, the plea agreement terms are not before us.

The dissent raises two other arguments that should be addressed before proceeding to the merits. Neither, we respectfully submit, can be considered under Rules 5A:12(c) and 5A:18. First, there is the argument that, because Carroll did not know he would be required to admit to the offense in sex offender treatment at the time he entered his <u>Alford</u> plea, his plea was not "intelligently and voluntarily made" as required by the United States Supreme Court's decision in <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969), to protect several federal constitutional rights, e.g. trial by jury, confrontation of witness, and the privilege against self-incrimination. Secondly, the dissent argues that the probation officer, as an agent of the executive branch,

violated the separation of powers provisions of the Virginia Constitution, Va. Const., art. I, § 5 and art. III, § I, and acted in a judicial capacity by imposing a probation condition not ordered by the trial court at sentencing. We note these issues were not raised in Carroll's questions presented, and Carroll's brief does not cite Boykin or any provision of the United States or Virginia Constitutions. Constitutional questions are not immune from the requirements of Rule 5A:12(c). See e.g. Saunders v. Commonwealth, 48 Va. App. 196, 207, 629 S.E.2d 701, 706 (2006) ("To the extent appellant's argument may raise due process notice issues, he did not include a due process claim in his petition for appeal, and no appeal was granted on this issue. Thus we may not consider such a claim in this appeal. See Rule 5A:12(c).").

Moreover, Rule 5A:18 provides that: "No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." Carroll did not argue at his probation violation hearing, or at any point during the litigation in the circuit court, that a finding that he was in violation would violate Boykin, the Federal Constitution, or the Virginia Constitution. Nor does he argue on appeal that these issues must be considered to attain the ends of justice. "[A]n appellate court may not 'recast' an argument made in a lower court into a different argument upon which to base its decision . . . ." Clifford, 274 Va. at 25, 645 S.E.2d at 297. We must, therefore, restrict the scope of our review to the merits of Carroll's questions presented.

Did Entering an Alford Plea Give Carroll an Enforceable
Prerogative to Maintain His Innocence During Sex Offender Treatment?

"[W]e have held consistently that 'revocation of a suspended sentence lies in the discretion of the trial court and that discretion is quite broad.'" Peyton v. Commonwealth, 268 Va. 503, 508, 604 SE.2d 17, 19 (2004) (quoting Hamilton v. Commonwealth, 217 Va. 325, 326, 228 S.E.2d 555, 556 (1976)). The trial court had the authority, under Code § 19.2-303.3(B), to

impose the probation condition that Carroll abide by any additional requirements established by his local probation office.[1]  Pursuant to Code § 19.2-306(A):  "In any case in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court."  "Nonetheless, we have required that '[t]he cause deemed by the court to be sufficient for revoking a suspension must be a reasonable cause. . . . The discretion required is a judicial discretion, the exercise of which implies conscientious judgment, not arbitrary action.'"  Peyton, 268 Va. at 508-09, 604 S.E.2d at 19 (quoting Marshall v. Commonwealth, 202 Va. 217, 220, 116 S.E.2d 270, 273 (1960)).  There is no dispute that Carroll had notice, by the time of the trial court's order of October 30, 2007 at the latest, that his compliance with any sex offender treatment ordered by his probation officer was required by the court.  Nor can we say that, given the offense of conviction, such a condition was unreasonable.  See Anderson v. Commonealth, 25 Va. App. 565, 574-75, 490 S.E.2d 274, 278 (1997); Nuckoles v. Commonwealth, 12 Va. App. 1083, 1086, 407 S.E.2d 355, 356 (1991).

Carroll's argument is that it was not the offense of conviction, but the fact that he was convicted of that offense via an Alford plea, that made his later violation of probation for refusing to admit to the offense unreasonable as a matter of law.  *At its core, Carroll's argument is that an Alford plea, by its nature, contains an implicit promise that the defendant will never be required to admit his guilt.*  And that is the precise issue before us for resolution.  Because Carroll's argument depends heavily on the correctness of his interpretation of Alford, and also

---

[1] Incidentally, our acceptance of the dissent's state separation of powers argument would require that we hold this statute unconstitutional.  Though we may need to review the constitutionality of the statute in some future case, we should not do so in the context of a case in which the issue was never briefed by the parties, and neither the defense nor the Commonwealth has had a chance to argue its merits.

- 11 -

because this appears to be a question of first impression in Virginia, we must examine the Supreme Court's <u>Alford</u> opinion in some detail.

The defendant in <u>Alford</u> was indicted for first-degree murder, a capital offense, and entered a plea of guilty to second-degree murder, which carried a maximum penalty of thirty years imprisonment. <u>Alford</u>, 400 U.S. at 26-29.

> After the summary presentation of the State's case, Alford took the stand and testified that he had not committed the murder but that he was pleading guilty because he faced the threat of the death penalty if he did not do so. In response to the questions of his counsel, he acknowledged that his counsel had informed him of the difference between second- and first-degree murder and of his rights in case he chose to go to trial. The trial court then asked appellee if, in light of his denial of guilt, he still desired to plead guilty to second-degree murder and appellee answered, "Yes, sir. I plead guilty on — from the circumstances that he [Alford's attorney] told me."

<u>Id.</u> at 28-29. The defendant later sought habeas corpus relief in federal court, arguing that his guilty plea had not been made knowingly, intelligently, and voluntarily because he had been coerced into entering the plea by his fear of the death penalty. A divided panel of the Fourth Circuit Court of Appeals reversed, relying heavily on <u>Jackson v. United States</u>, 390 U.S. 570, 571-72 (1968) (federal kidnapping statute that authorized the death penalty if defendant was convicted after a jury trial but not if defendant pled guilty was unconstitutional for impermissibly impairing the right to trial by jury). <u>Alford v. North Carolina</u>, 405 F.2d 340 (4th Cir. 1968). The State of North Carolina then appealed to the United States Supreme Court.

The Supreme Court began its analysis by announcing that <u>Jackson</u> did not create any new test for the validity of guilty pleas. <u>Alford</u>, 400 U.S. at 31. "The standard was and remains whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant." <u>Id.</u> The Court emphasized that making a guilty plea that had the consequence of limiting the severity of the potential sentence could clearly be the product of a

- 12 -

free and rational choice, even if "[the defendant] would not have pleaded except for the opportunity to limit the possible penalty . . . ." Id. The Court recognized that ordinary pleas of guilty are accompanied by an admission by the defendant that he committed the crime charged, id. at 32, and proceeded to assess the implications of the defendant's protestations of innocence on the validity of his guilty plea.

After summarizing the conflicting state and lower federal court cases on the question, the Court reviewed its own prior cases, Lynch v. Overholser, 369 U.S. 705 (1962) (suggesting that a judge could accept a guilty plea even if the evidence suggested there was a valid defense), and Hudson v. United States, 272 U.S. 451 (1926) (upholding a federal court's power to impose a prison sentence after accepting a plea of *nolo contendere*).

> These cases would be directly in point if Alford had simply insisted on his plea but refused to admit the crime. The fact that his plea was denominated a plea of guilty rather than a plea of *nolo contendere* is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law. Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

Alford, 400 U.S. at 37 (citations omitted). Noting the "overwhelming evidence" against the defendant, the Court concluded: "When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned." Id. at 37-38 (citation omitted).

Carroll argues that his probation violation for making claims of innocence during sex offender therapy was inconsistent with his Alford plea. At least two courts in other jurisdictions

- 13 -

have agreed with him, holding that a defendant did not violate probation by refusing to admit guilt during sex offender treatment. People v. Walters, 627 N.Y.S.2d 289 (N.Y. Co. Ct. 1995); State v. Birchler, 2000 Ohio App. LEXIS 4622 (2000). However, the Commonwealth's position to the contrary is endorsed by several other jurisdictions, which reach the opposite conclusion. See State v. Faraday, 842 A.2d 567 (Conn. 2004); Warren v. Richland Co. Circuit Ct, 223 F.3d 454 (7th Cir. 2000); State v. Alston, 534 S.E.2d 666 (N.C. 2000); State ex rel. Warren v. Schwarz, 579 N.W.2d 698, 706 (Wis. 1998); People v. Birdsong, 958 P.2d 1124 (Colo. 1998)[2]; State v. Jones, 926 P.2d 1318 (Idaho App. 1996).

We find the latter set of cases more persuasive, not because they form a longer list, but because their analysis is more faithful to the reasoning of the Supreme Court's opinion in Alford. Recall that Alford did not announce any new standard for the validity of guilty pleas. Alford, 400 U.S. at 31. The decision merely recited an existing standard, previously announced in Boykin, 395 U.S. 238 (i.e., a valid guilty plea requires an affirmative showing that the plea was intelligent and voluntary), and applied that standard to a guilty plea entered amid contemporaneous assertions of innocence, holding that such a guilty plea is not automatically invalid under the Federal Constitution. Alford contains no language indicating that the

---

[2] Carroll attempts to distinguish Birdsong because in that case, the defendant had actual knowledge that he would be required to complete sex offender treatment at the time of his Alford plea. Carroll accurately distinguishes this case from the view of Birdsong adopted in Justice Scott's concurring opinion, which argued that the defendant's actual knowledge meant that there was no need for the court to address the more general question of the probation conditions allowed by an Alford plea. However, the majority's holding is broader: "There is nothing inherent in an Alford plea that gives the defendant any rights, or promises any limitations with respect to the punishment imposed after the conviction," Birdsong, 958 P.2d at 1130, and is inconsistent with Carroll's argument.

- 14 -

*consequences* of such a plea are different from the consequences of a plea of *nolo contendere*.[3]

Indeed, the text of the opinion affirmatively suggests that they are the same.

> Nor can we perceive *any material difference* between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.

Alford, 400 U.S. at 37 (emphasis added). "An Alford plea is a guilty plea in the same way that a plea of nolo contendere or no contest is a guilty plea." State ex rel. Warren, 579 N.W.2d at 706. See also Ward, A Plea Best Not Taken: Why Criminal Defendants Should Avoid the Alford Plea, 68 Mo. L. Rev. 913, 915-18 (2003). We also note that this was exactly what the trial judge told Carroll an Alford plea meant, and what Carroll acknowledged he understood, given his affirmative answer to the following question:

> Q:     [Do] you understand that the legal consequences of an Alford plea *are the same as a guilty plea or a finding of guilt?*

(Emphasis added).

Walters and Birchler, on the other hand, do not review the reasoning of Alford, and they contain propositions with no basis in the text of that decision. See Birchler, 2000 Ohio App. LEXIS 4622, at 4 ("An Alford plea is considered a qualified guilty plea because it allows a defendant to enter a guilty plea yet maintain his or her innocence."). The Birchler court cites

---

[3] As the dissent correctly notes, the consequences of Alford pleas and pleas of *nolo contendere* are different from the consequences of ordinary guilty pleas in that unlike the person who makes an ordinary guilty plea, an Alford plea defendant is not estopped from denying that he committed the offense in a subsequent civil proceeding. See Parson v. Carroll, 272 Va. 560, 566, 636 S.E.2d 452, 455 (2006). What is missing from the dissent's argument, however, is any authority holding that a *nolo contendere* plea, which the dissent concedes is legally the same as an Alford plea, imposes any special limitations on the probation conditions that a sentencing court may impose in its final disposition of the *same criminal case* in which the plea was originally entered.

"Alford, supra" for this proposition, but it does not mention the page where this proposition is to be found, nor does it quote or cite any language from Alford suggesting that such a plea is a "qualified" guilty plea. See also Walters, 627 N.Y.S.2d at 291 (holding, without any citation to authority that "[t]o require defendant to admit to his factual guilt during treatment, upon threat of incarceration, is directly inconsistent with the plea agreement entered into by the People, the defendant and the Justice Court").

Of course there is an inconsistency between any defendant's protestations of innocence and the probation condition that he admit his guilt. But, in some degree, this kind of tension is inherent in every Alford plea.

> A guilty plea under the Alford doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. In North Carolina v. Alford, 400 U.S. 25, 37 (1970), the United States Supreme Court treated such guilty pleas as the functional equivalent of a plea of nolo contendere.

State v. Palmer, 491 A.2d 1075, 1077 n.3 (Conn. 1985). Ultimately, Carroll's argument of inconsistency proves too much. A defendant who has entered an Alford plea is not an innocent person for the purposes of criminal sentencing and probation. To mitigate the possibility that an innocent person will so plead, a factual basis is required supporting the finding of guilt before an Alford plea can be accepted. See Jones v. Commonwealth, 29 Va. App. 503, 511, 513 S.E.2d 431, 435 (1999). "While Alford pleas are rare, from the State's perspective they are no different from other guilty pleas; it would otherwise be unconscionable for a court to sentence an individual to a term of imprisonment." Silmon v. Travis, 741 N.E.2d 501, 504 (N.Y. 2000).

The rest of Carroll's argument is an attack on the evidence that he actually raped his stepdaughter. Carroll emphasizes the lack of physical evidence that he committed the crime, the inconsistencies between the alleged victim's statements and the physical evidence, and the

- 16 -

alleged victim's prior inconsistent statements. Finally, Carroll makes the quite plausible claim that a plea of guilty to assault and battery after five years of probation is an unusually favorable disposition for such a serious charge, and indeed a disposition that would probably be unacceptable to the Commonwealth if it had stronger evidence. But these points are relevant to the claim that the trial judge erred in finding an adequate factual basis to support *Carroll's Alford plea*, and Carroll has not appealed this finding. They do nothing to advance the separate claim that the trial court, *after* accepting the plea, later erred in finding Carroll in violation of probation because *every* Alford plea necessarily imposes special limits on the probation conditions a court may impose, a claim that is not supported by the reasoning of the Alford decision. Given the questions presented in this case, our acceptance of the second claim is necessary before we may reverse Carroll's conviction. Accordingly, we hold that the trial court did not err in finding that Carroll violated his probation.

II.

Did the Trial Court Abuse its Discretion in Denying
Carroll's Request for Individual Sex Offender Therapy?

Carroll also appeals the trial court's refusal to order him into individual therapy in lieu of the sex offender program from which he had already been discharged for refusing to admit his guilt. Carroll formulates his second question presented thusly: "Whether the trial court erred in not considering a reasonable alternative treatment modality (sex offender treatment with an expert forensic psychologist) in lieu of probation revocation coupled with the condition of successfully completing the same program from which Appellant was terminated?" In general, a court does not need to announce that it has considered specific alternatives to its orders in determining the appropriate sanction for a probation violation.

> The decision to revoke probation is generally predictive and
> subjective in nature, and the fairness guaranteed by due process
> does not require a reviewing court to second-guess the factfinder's

- 17 -

> discretionary decision as to the appropriate sanction. Accordingly, our precedents have sought to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial. We believe that a general requirement that the factfinder elaborate upon the reasons for a course not taken would unduly burden the revocation proceeding without significantly advancing the interests of the probationer.

Black v. Romano, 471 U.S. 606, 613 (1985) (citations omitted).

Carroll's argument on brief is closely related to the Alford plea argument we rejected in Part I of this opinion. He relies heavily on Gilfillen v. State, 582 N.E.2d 821 (Ind. 1991), a decision of the Supreme Court of Indiana, for the proposition that the sex offender treatment condition imposed by the trial court in this case was unreasonable, arbitrary, and useless. The defendant in Gilfillen was convicted at trial of child molestation, despite his assertion that he was innocent. Id. at 822. The court reversed his conviction for violating probation because he refused to admit his guilt during sex offender therapy.

> Reasonable conditions on probation may be imposed on a defendant, but thought control is not one of them. Thus, in a circumstance such as this, where the defendant has not pled guilty but was instead convicted while denying guilt, trial courts may not insist on an admission of guilt as a condition of probation or use a continued denial of guilt as the basis for revocation.

Id. at 824. There is, however, an important difference between Virginia and Indiana on the law applicable to guilty pleas. As a matter of Indiana state law, it is reversible error for a trial judge to accept an Alford plea. See Ross v. State, 456 N.E.2d 420, 423 (Ind. 1983). The Indiana Supreme Court's characterization of the requirement that a defendant must admit his guilt during sex offender therapy as "thought control" in Gilfillen seems to us to reflect the same distaste for the inconsistency between protestations of innocence and the legal effect of a guilty plea that had earlier persuaded the same court to reject the Alford plea in Ross. See id. at 422-23 ("'No plea of guilty should be accepted . . . when it appears that, for any reason, the plea is wholly

inconsistent with the realities of the situation.'"  (quoting <u>Harshman v. State</u>, 115 N.E.2d 501, 502 (Ind. 1953))).

But the Virginia courts have never expressed this view, and we must follow our own precedents holding that the <u>Alford</u> plea, and any potential inconsistencies that may accompany the same, are an accepted part of Virginia law.  <u>See</u> <u>e.g.</u> <u>Parson v. Carroll</u>, 272 Va. 560, 565, 636 S.E.2d 452, 455 (2006) (citing cases); <u>Smith v. Commonwealth</u>, 27 Va. App. 357, 363, 499 S.E.2d 11, 14 (1998).  The record does not show that the trial court abused its discretion in ordering sex offender treatment as a condition of Carroll's probation.  Carroll's conviction and sentence are affirmed.

<u>Affirmed.</u>

Alston, J., concurring, in part, and dissenting, in part.

I concur in the holding and judgment of the majority that the trial court did not err in failing to consider "a reasonable alternative treatment modality (sex offender treatment with an expert forensic psychologist) in lieu of probation revocation coupled with the condition of successfully completing the same program from which [a]ppellant was terminated." The "only limitation placed upon the discretion of the trial court in its determination of what conditions are to be imposed is that a condition be 'reasonable.'" Nuckoles v. Commonwealth, 12 Va. App. 1083, 1086, 407 S.E.2d 355, 356 (1991). The record does not show that the imposition of group sex offender therapy as a condition of probation in this case was unreasonable. Thus, I agree that the trial court did not abuse its discretion in this regard.

However, I respectfully disagree with the majority decision that the trial court did not err in finding appellant in violation of probation based solely on his refusal to *admit* to rape during sex offender treatment. The majority decision makes a strong and compelling policy statement regarding the expectations of probation in the traditional case. However, this matter is not the traditional case. I believe that the majority result eviscerates a plea made pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), by stripping the plea of its most salient feature from appellant's perspective, that is, the ability of a defendant to maintain his innocence while simultaneously agreeing to the *entry* of a guilty conviction without the benefit of a trial on the merits. While I appreciate the critical importance in assuring that probationers adhere to the demands and rigors of probation supervision, in my view, the majority's conclusion in this particular case is analytically flawed for two important reasons: (1) there is a fundamental inconsistency between appellant's claim of innocence implicit in his making a *plea agreement* to the underlying charge pursuant to Alford and a subsequently and unilaterally imposed probation condition requiring that appellant *admit* to the same charge during sex offender treatment; and

- 20 -

(2) the *plea agreement* in the instant case, which by its very nature is a contract entered into by the Commonwealth and appellant and approved by the trial court, contained no probation condition that the appellant sacrifice his contractual prerogatives under his Alford plea and *admit* to the underlying charge in sex offender treatment. Therefore, after much careful deliberation and circumspection, I respectfully dissent from that portion of the judgment and would reverse the trial court's decision revoking appellant's probation on this specific ground.

## I. BACKGROUND

Appellant was indicted in 2007 for a crime that occurred in 1983.[4] In 1984, the Commonwealth destroyed specimens and other evidence obtained through a physical examination of the victim of the crime. Against this backdrop of evidentiary deficiencies, appellant and the Commonwealth conducted plea negotiations and entered into a plea agreement. In the plea agreement, appellant stated, and the government explicitly agreed, that appellant "[did] not admit that [he] committed the crime to which [he was] pleading guilty" and that he "still claim[ed] innocence." Pursuant to the plea agreement, the trial court agreed to continue sentencing on the charge for five years. In exchange for the plea, appellant agreed to five years of supervised probation and to "be of general good behavior;" have "no contact with [the] victim and her family;" and "[pay] court costs." At the end of five years and upon appellant's performance of the conditions, the Commonwealth would request that the trial court vacate the conviction and accept a guilty plea to the lesser-included offense of assault and battery pursuant to Code § 18.2-57. The plea agreement further stated that "[t]here [was] no agreement in connection with this case except for the agreement described [herein]."

---

[4] The initial charge for the 1983 crime was dismissed by a *nolle prosequi*. Later, while investigating a different allegation of rape that involved appellant's sister, the assigned detective re-opened the 1983 case. Consequently, appellant was indicted for a second time pertaining to the 1983 crime in 2007.

At a September 6, 2007 hearing, the trial court conducted a colloquy with appellant. During the colloquy, appellant made an Alford plea. In accord with Boykin v. Alabama, 395 U.S. 238, 242 (1969), the trial court found that the plea was made "freely and voluntarily with an understanding of its nature and its consequences." See James v. Commonwealth, 18 Va. App. 746, 750, 446 S.E.2d 900, 902 (1994) ("Boykin requires that before a trial court may accept a criminal defendant's guilty plea there must be an affirmative showing that the plea was intelligently and voluntarily made."). The trial court approved the plea agreement.[5]

On September 20, 2007, the trial court entered an order noting that appellant "protested his innocence" by making an Alford plea and restating the conditions of his probation. In addition, the order stated that appellant must "comply with all the rules and requirements set by the Probation Officer," including "[any] substance abuse counseling, testing, and/or treatment as prescribed by the Probation Officer." On October 5, 2007, appellant made a motion to amend the September 20, 2007 order requesting, in part, that "[n]o sex offender treatment be prescribed or required by the Probation Officer." On October 9, 2007, the trial court denied appellant's request. Accordingly, appellant entered sex offender therapy but was terminated solely because he refused to admit to the crime.

On June 13, 2008, the trial court conducted a probation revocation hearing. At the hearing, appellant claimed he did not violate the conditions of his probation by failing to admit to

---

[5] Significantly, the Commonwealth did not agree to a "plea and recommendation" pursuant to Rule 3A:8, a rule substantially equivalent to Federal Rule of Criminal Procedure 11. In circumstances involving a "plea and recommendation," the Commonwealth agrees to make a recommendation, or not to oppose the defendant's request for a particular sentence, with the understanding that the recommendation or request is not binding on the trial court. See Rule 3A:8(c)(1)(B), 3A:8(c)(2); see also United States v. Iaquinta, 719 F.2d 83, 85 (4th Cir. 1983) (explaining that in the context of a Fed. R. Crim. P. 11(e)(1)(B) plea agreement, the U.S. Attorney simply agrees to make sentencing recommendations with the understanding that such recommendations are not binding on the district court). By contrast, the trial court in this case approved and accepted a plea agreement, a disposition binding the trial court to the terms of the plea agreement.

the crime. Specifically, he contended the trial court could not find that he violated his probation because the trial court accepted his Alford plea under the plea agreement. In doing so, according to the appellant, the trial court permitted him to maintain his innocence. Furthermore, appellant claimed that requiring him to admit to the crime would be "a breach of the plea agreement, to the extent that specifically in the plea agreement . . . [appellant] recite[d], [']I do not admit that I committed the crime to which I am pleading guilty.[']" The trial court disagreed with appellant, and revoked his probation for his failure to admit to the crime and sentenced him on the charge.

## II. ANALYSIS

As a preliminary matter, I disagree with the majority's characterization that an Alford plea is indistinguishable from a guilty plea in all respects. An Alford plea is akin to a plea *nolo contendere*, that is, a plea that is not "a confession of guilt and has no effect beyond permitting the court to impose sentence in a particular case." Commonwealth v. Jackson, 255 Va. 552, 555, 499 S.E.2d 276, 278 (1998) (citing Roach v. Commonwealth, 157 Va. 954, 959, 162 S.E. 50, 51 (1932)). Nonetheless, "by entering a plea of *nolo contendere*, the defendant 'implies a confession . . . of the truth of the charge . . . [and] agrees that the court may consider him guilty' for the purpose of imposing judgment and sentence." Id. (quoting Honaker v. Howe, 60 Va. (19 Gratt.) 50, 53 (1869)). Practically applied, a plea *nolo contendere* and an Alford plea are the same. See Alford, 400 U.S. at 37 ("Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence . . . .").

Originating from early medieval practice, the plea *nolo contendere* was a means used by a defendant wishing to avoid imprisonment and seeking "to make an end of the matter (*finem facere*) by offering to pay a sum of money to the king." Id. at 36 n.8 (citing 2 F. Pollock & F. Maitland, History of English Law 517 (2d ed. 1909)). In making this plea, the defendant did not

admit his guilt when he sought such a compromise, but merely "'put himself on the grace of our Lord, the King, and asked that he might be allowed to pay a fine.'" Id. (citing Anon., Y. B. Hil. 9 Hen. 6, f. 59, pl. 8 (1431)). Eighteenth century case law distinguished the *nolo contendere* plea from a jury verdict of guilt, noting that in the former, "the defendant could introduce evidence of innocence in mitigation of punishment, whereas in the latter such evidence was precluded by the finding of actual guilt." Id. (citing Queen v. Templeman, 1 Salk. 55, 91 Eng. Rep. 54 (K.B. 1702)). "Throughout its history, . . . the plea *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty . . . ." Id.

Against this historical backdrop, the Alford plea developed as a mechanism whereby "'a defendant maintains innocence while entering a plea of guilty because the defendant concludes that his interests require entry of a guilty plea and the record before the court contains strong evidence of actual guilt.'" Perry v. Commonwealth, 33 Va. App. 410, 412, 533 S.E.2d 651, 652-53 (2000) (quoting Cortese v. Black, 838 F. Supp. 485, 492 (D. Colo. 1993) (citing Alford, 400 U.S. at 37)). In making an Alford plea, "'[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence *even if he is unwilling or unable to admit his participation in the acts constituting the crime.*'" Parson v. Carroll, 272 Va. 560, 565, 636 S.E.2d 452, 454-55 (2006) (quoting Alford, 400 U.S. at 37) (emphasis added).

> Based on this holding in Alford, the courts in this Commonwealth in the exercise of their discretion have permitted criminal defendants who wish to avoid the consequences of a trial to plead guilty by conceding that the evidence is sufficient to convict them, while maintaining that they did not participate in the acts constituting the crimes.

Id. at 565-66, 636 S.E.2d at 455 (citations omitted).

Further defining the nature of the Alford plea, the Supreme Court of Virginia stated in Parson that in making such a plea, a defendant "assume[s] a position of law, not a position of fact." Id. at 566, 636 S.E.2d at 455. In that case, the Court held that Parson's concession of law in making an Alford plea "did not provide a basis for applying judicial estoppel" in a subsequent defamation action by Parson against the victim. Id. Admittedly, Parson presents a different factual context than the facts herein. The Court's conclusion, however, is applicable in this case. Parson makes clear that when a defendant tenders an Alford plea, he "concede[s] only that the evidence was sufficient to convict him of the offenses" and "d[oes] not admit as a factual matter that he had participated in the acts constituting the crimes." Id. Manifest to the Alford plea, therefore, is the defendant's protestation that he did not commit the acts for which he is charged.

By stark contrast, a guilty plea is founded upon the defendant's express admission to having committed the crime. It is clear, therefore, that the only conceivable similarity between the guilty plea and the Alford plea is in the nature of their result. Stated another way, an Alford defendant agrees to be treated as if he had made a guilty plea only for purposes of sentencing. Notwithstanding this similarity, the Alford defendant retains, unlike defendants who enter a traditional guilty plea, the enforceable prerogative to maintain his innocence.

Turning to the circumstances of this case, it is clear that appellant tendered his Alford plea because he believed he was innocent. It is not insignificant that the underlying allegations against the appellant were over two decades old and that there were serious evidentiary considerations for both the appellant and the government. Part and parcel of appellant's plea agreement was his protestation that he was innocent and by written accord, an agreement by the government that appellant would not have to admit that he committed the offense. During the plea colloquy, appellant informed the trial court that he was not "guilty of the crime." To subsequently force appellant to *admit*, upon government enforced sanction, to the same crime to

- 25 -

which he entered the Alford plea in his sex offender therapy when he vehemently denied committing the crime and contractually was permitted to forego an admission of his guilt in his deal with the government is irreconcilable with his Alford plea and renders meaningless the distinction between an Alford plea and a guilty plea.[6] Moreover, the majority's conclusion requires appellant to pursue one of several untenable courses:  to take a position in sex offender treatment legally inconsistent with his plea; to tell a lie in either the sex offender treatment or during the Boykin colloquy[7]; or to forfeit his right to enter a plea consistent with the requirements of Alford.  To be sure, when appellant entered his Alford plea, he "assumed a position of law, not a position of fact," and he "did not admit as a factual matter that he had participated in the acts constituting the crimes."  Id.  Thus, I would hold that appellant could not be required to admit to the crime in sex offender therapy when he tendered an Alford plea.[8]

My disagreement with the majority's holding on this matter is underscored for a second reason particular to this case:  the plea agreement in the instant case, which by its very nature is a contract entered into by the Commonwealth and appellant, and approved by the trial court, contained no probation condition that appellant sacrifice his contractual prerogatives under his

---

[6] In dicta, we have alluded to the inherent contradiction apparent in requiring an Alford defendant to assume responsibility for a crime while he asserts his innocence.  See Smith v. Commonwealth, 27 Va. App. 357, 364, 499 S.E.2d 11, 14 (1998) (holding that the trial court did not err in considering an Alford defendant's lack of remorse as one factor in sentencing, but indicating that the Court's holding did not "require him to assume responsibility for crimes while asserting his innocence").

[7] See James v. Commonwealth, 18 Va. App. 746, 750, 446 S.E.2d 900, 902 (1994) ("Boykin [v. Alabama, 395 U.S. 238, 242 (1969),] requires that before a trial court may accept a criminal defendant's guilty plea there must be an affirmative showing that the plea was intelligently and voluntarily made.").

[8] Indeed, appellant was not, and could not be, aware that his probation would be revoked for failure to admit to the crime when he entered into the plea agreement.  Appellant quite reasonably expected that he and the Commonwealth would be bound by the terms of the plea agreement.

Alford plea and admit to the underlying charge in sex offender treatment. "The Court of Appeals and other courts that have considered such agreements have uniformly held that . . . a plea agreement[] implicate[s] a defendant's due process rights and [is] generally governed by the law of contracts." Hood v. Commonwealth, 269 Va. 176, 181, 608 S.E.2d 913, 915-16 (2005). A contract is an agreement between two or more parties requiring acceptance of an offer, as well as valuable consideration. See Montagna v. Holiday Inns, Inc., 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980). Consideration is the price bargained for and paid for the agreement or promise. Id.

Applying these principles to the facts of this case, it is clear that appellant entered into a valid and enforceable contract with the Commonwealth, whereby he maintained he did "not admit that [he] committed the crime" and that he "still claim[ed] innocence." As a result of the plea, the Commonwealth received the benefit of the bargain by obtaining an Alford plea from appellant and the entry of an order of conviction, by satisfying a significantly lower burden of proof requiring only a "strong factual basis" for the plea, see Alford, 400 U.S. at 38, and by disposing of the case in an efficient means. Appellant, in turn, received the benefit of maintaining his innocence, having his sentencing continued while he was on probation, and upon satisfying the probation conditions, having his conviction vacated and amended to a guilty plea to the lesser-included offense of assault and battery. The conditions of probation included that he was to "be of general good behavior," have "no contact with victim and her family," and pay court costs. The plea agreement further stated, "There is no agreement in connection with this case except for the agreement described in this document." Thus, following the trial court's acceptance of the plea agreement, appellant and the Commonwealth were bound by the terms of a valid and enforceable contract.

Here, the government, through the probation officer, added a new condition of probation requiring appellant to admit to the underlying offense during sex offender therapy. To the

contrary, the plea agreement specifically stated that the appellant was *not* admitting that he committed the offense. The position of the government, endorsed by the majority, effectuates a change in the fundamental purpose in the agreement reached between the parties in this matter. To accomplish such an objective, there must have been a clear and definite intention on the part of all concerned to the agreement that such is the purpose of the new agreement. At no point did appellant agree to this additional probation condition and at no point did the parties execute a valid novation to the plea agreement.[9] There is no evidence in the record to support this concept of mutual assent to a change in the agreement the parties reached.

The majority takes great pains to point to the various and arguably significant indicators of appellant's culpability in the matter, yet criticizes the dissent for pointing out the significant factors in this case which may suggest the incongruence of legal culpability. However, for our purposes, the majority's references are not relevant to the issue before the Court. The appellant met his part of the bargain by not exercising his constitutional right to challenge the Commonwealth's case *and* by acceding to the entry of a guilty conviction. The appellant's "bargain for in exchange" was the prerogative to maintain his innocence even in light of the conviction.

Appellant's ability to maintain his innocence was the *sine qua non* or essence of his agreement with the Commonwealth. By recommending that the trial court revoke his probation for a condition not only *not included* in the plea agreement, but instead, specifically disclaimed by both parties to the agreement, the Commonwealth gained the benefit of a prerogative it had

---

[9] "[A] novation is defined as a mutual agreement among all parties concerned for discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another." Honeywell, Inc. v. Elliott, 213 Va. 86, 89-90, 189 S.E.2d 331, 334 (1972) (citations omitted). "To effect a novation there must be a clear and definite intention on the part of all concerned that such [a change] is the purpose of the [new] agreement, for it is a well settled principle that novation is never to be presumed." Id.

specifically renounced in the agreement. Thus, I would hold that the trial court erred in revoking appellant's probation because the plea agreement did not require that appellant admit to the charge during sex offender therapy.[10]

I also disagree with the majority's assertion that Rule 5A:12(c) precludes consideration of whether the trial court erred in revoking his probation because the plea agreement did not require that he admit to the charge. Rule 5A:12(c)[11] is a non-jurisdictional rule, and as such, the rule's invocation "to prevent consideration of [an appeal's] merits, should not be undertaken without considering whether a party's failure to adhere strictly to the rule's requirements is insignificant, or so substantial as to preclude the court's addressing the merits of the case." Moore v. Commonwealth, 276 Va. 747, 753, 668 S.E.2d 150, 153-54 (2008).

---

[10] Furthermore, I have grave concerns about the circumstances surrounding the plea agreement in this case. The probation officer added a condition to appellant's probation that was in opposition to the plea agreement terms approved by the trial court. Essentially, the probation officer, who was an agent of the executive branch, acted in a judicial capacity by requiring that appellant admit to the crime, a probation condition inconsistent with the terms of the plea agreement. The result suggested by this dissent avoids what could be considered the more significant question as to whether the probation officer violated principles of separation of powers contained in the Constitution of Virginia. See Va. Const. art. I, § 5 and art. III, § 1.

Contrary to the majority's assertion, my concern pertaining to the separation of powers issue in no way suggests that Code 19.2-303.3(B) is unconstitutional. See generally Code § 19.2-303.3(B) (permitting trial courts to direct criminal defendants to "abide by any additional requirements of supervision imposed or established by the local community-based probation services agency during the period of probation supervision"); Perkins v. Commonwealth, 12 Va. App. 7, 14, 402 S.E.2d 229, 233 (1991) ("In assessing the constitutionality of a statute, we must presume that the legislative action is valid."). Certainly, a probation officer has "supervisory responsibility for [a probationer's] conduct and treatment during the course of his probation" and is "charged by law with defining a probationer's permissible or impermissible conduct." Miller v. Commonwealth, 25 Va. App. 727, 743-45, 492 S.E.2d 482, 491 (1997). I disagree, however, that a probation officer may impose a condition requiring a probationer to admit to a crime and thereby defeat the very core of the plea agreement the probationer entered into with the Commonwealth and approved by the trial court, which permitted him to maintain his innocence.

[11] Rule 5A:12(c) provides, in pertinent part, that "[o]nly questions presented in the petition for appeal will be noticed by the Court of Appeals."

In this case, appellant's question presented does not explicitly state that the terms of the plea agreement permitting appellant to maintain his innocence was a ground upon which his probation could not be revoked for failure to admit to the crime. Nevertheless, in explicitly making his claim based on his Alford plea, appellant also implicitly included a claim embodied in the plea agreement terms. Indeed, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Ignoring the existence of the plea agreement in this case is to disregard an indispensable and prominent aspect of the factual and legal background of the matter.

It is clear that in appellant's case, he made an Alford plea in conjunction with the terms of the plea agreement in which he maintained his innocence. The plea agreement terms certainly induced him to make his Alford plea, and it cannot be contended that he would have made the Alford plea without entering into the express terms of the plea agreement. Thus, I would conclude that appellant's failure to explicitly include his claim pertaining to the plea agreement in the question presented was not significant. See Moore, 276 Va. at 753, 668 S.E.2d at 153-54. Accordingly, I would conclude that the issue is not defaulted pursuant to Rule 5A:12(c).

III. CONCLUSION

For these reasons, I disagree with the majority's holding and judgment that the trial court did not err in finding appellant in violation of probation based solely on his refusal to admit to rape during sex offender treatment. Therefore, I dissent from that portion of the judgment and I would reverse the trial court's decision revoking appellant's probation.